### MONTGOMERY et al. v. PACIFIC ELECTRIC RY. CO.*

(Circuit Court of Appeals, Ninth Circuit. November 13, 1923.)

No. 4045.

1. Courts ⬅➡347—Failure to deny admits allegations of complaint.

Under New Equity Rules of 1912, rule 30 (201 Fed. v, 118 C. C. A. v), defendant's failure to deny an allegation of the complaint, other than allegations of value or amount of damages, is a confession that the allegation is true; but, if justice so requires, the answer may be amended by leave of the court or judge on reasonable notice.

2. Appeal and error ⬅➡1201(1)—Amendment to answer, offered nearly three years after temporary injunction order affirmed, held properly denied.

Where the complaint, in a suit to restrain officials of railroad brotherhoods from interfering with an electric railroad's business, alleged the

---

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied December 17, 1923.

railroad's fixed policy to prevent unionizing of its employees, which was agreed to by each of its employees, an amendment to the answer, denying this allegation, offered more than four years after the filing of the complaint, and nearly three years after the temporary injunction was affirmed, was properly denied, especially as defendants were not harmed thereby, since plaintiff had proved the allegation as though it was in issue.

**3. Constitutional law ⟨⟩275(2)—Master and servant ⟨⟩15—Statute penalizing employer making nonmembership in union condition of employment held unconstitutional.**

Pen. Code Cal. § 679, providing that any employer, or his agent, who shall compel any person to agree not to join any labor organization as condition to securing or continuing in employment, shall be guilty of a misdemeanor, is repugnant to the due process clause of the Fourteenth Amendment, and is therefore void.

**4. Injunction ⟨⟩128—Evidence held to warrant decree restraining brotherhood officials from interfering with contractual relations between railroad and its employees.**

In a suit by an electric railroad to restrain railroad brotherhood officials and others, who were not employees of the railroad, from interfering with its business and with its contractual relations with its employees, who were under agreement not to join any labor organization, evidence that defendants instigated a strike for the purpose of securing recognition of the union on seven hours' notice to the railroad *held* sufficient to justify a decree restraining defendants, and was not prohibited under Clayton Act, § 6 (Comp. St. § 8835f), providing that labor organizations shall not be construed to be illegal, and section 20 (Comp. St. § 1243d), prohibiting injunction against certain acts in disputes between employers and employees.

**5. Evidence ⟨⟩121(3)—Correspondence between railroad president and brotherhood officials held res gestæ.**

Correspondence between the president of an electric railroad and officials of railroad brotherhoods in reference to unionizing railroad employees, and to a strike of its employees, *held* part of the res gestæ in a suit to restrain interference by such officials with the railroad's business and with its contractual relation with its employees.

**6. Master and servant ⟨⟩3(1)—Nonmembership in union may be made condition of employment.**

An employer is acting within his legal right in making nonmembership in a union a condition of employment.

**7. Injunction ⟨⟩101(1)—Clayton Act does not prohibit injunction against union officials not parties to dispute.**

Clayton Act, § 20 (Comp. St. § 1243d), regulating injunctions in labor disputes, does not prohibit courts from restraining activities of union officials who are not parties to a dispute respecting the terms and conditions of their own employment, in promoting a strike of employees of an electric railroad to gain recognition of the union, since the right of employees to strike does not give outsiders the right to instigate a strike.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California.

Suit in equity by the Pacific Electric Railway Company against M. E. Montgomery and others, to make permanent a preliminary injunction restraining defendants from interfering with the contractual relations existing between plaintiff and its employees. From a decree for plaintiff, defendants appeal. Affirmed.

See, also, 258 Fed. 382.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Albert E. Sherman, of Los Angeles, Cal., for appellants.

Oscar Lawler, Frank Karr, and R. C. Gortner, all of Los Angeles, Cal., for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. Plaintiff in the lower court (appellee here), the Pacific Electric Railway Company, is an electric railway·corporation incorporated under the laws of California, having its principal place of business·in the city of Los Angeles. It is a common carrier, operating a system of urban and interurban lines of railroads in the counties of Los Angeles, Orange, Riverside, and San Bernardino, Cal., engaged in handling passengers and freight in both interstate and intrastate transportation.

Defendants below (appellants here) include the Brotherhood of Railroad Trainmen (hereinafter designated as B. of R. T. for brevity) and the Brotherhood of Locomotive Engineers (hereinafter designated as B. of L. E. for brevity), unincorporated associations doing business in the city of Cleveland, state of Ohio. Defendant M. E. Montgomery is a resident of San Jose, Cal., and ˙defendant J. A. Farquharson is a resident·of Muskogee, Okl. Montgomery is Assistant Grand Chief of the B. of L. E. Farquharson is vice president of the B. of R. T. The other defendants are residents of the city of Los Angeles, some of whom have been served with process and others not.

The B. of R. T. and the B. of L. E. are labor organizations or societies, organized and maintained by those engaged in platform work and other railroad service in the United States and Canada. These brotherhoods are composed of a large number of local self-governing lodges, conveniently located for their members in the various railroad towns and cities of the United States. On July 2, 1918, plaintiff had in its employ upwards of 1,500 men. During April, May, and June of 1918, many of plaintiff's employees were persuaded to join the B. of L. E. or the B. of R. T., so that by July·2d over 1,200 men had become affiliated with these organizations. For more than five years previously it had been the fixed policy of the plaintiff to prevent the unionizing of its employees, and to deal with them as to all matters and things properly arising between such employer and employees only as individuals, and not collectively or through organizations.

It appears that, notwithstanding such terms of employment, the defendants Montgomery and Farquharson, who were not employed by the plaintiff, and therefore not parties to any actual dispute, undertook to interfere between the plaintiff and its employees, claiming that the labor organizations named were authorized to represent the employees in an alleged controversy. The moving cause of complaint of the defendants was that the plaintiff had refused to recognize the labor organizations. in such controversy, and a strike of the employees ensued. Thereupon plaintiff filed a complaint in the District Court of the United States at Los Angeles, praying for a temporary injunction restraining the defendants from certain acts of interference with plaintiff's business and its contractual relations with its employees. The application was heard upon the complaint and a supporting affidavit, and

the temporary injunction issued. From this order an appeal was prosecuted to this court.

The facts relating to the issuance of the temporary injunction and necessary to be considered by the court in determining this question are fully stated in the opinion of Judge Ross in Montgomery et al. v. Pacific Electric Railway Co., 258 Fed. 382, 169 C. C. A. 398. Among other questions determined was the inviolability of the contract between the plaintiff and its employees that nonmembership in a union was a condition of employment, and that plaintiff, under the terms of employment, would deal with its employees as individuals only, and not collectively or through organizations.

This court affirmed the order granting the temporary injunction on May 26, 1919. On August 16, 1919, plaintiff's employees again went out on a strike. On June 19, 1920, or nearly two years after plaintiff filed its complaint, and more than a year after the decision of this court, affirming the temporary injunction, defendants answered; and nearly two years thereafter, or in February, 1922, the case was brought to a hearing in the District Court upon an application for a final decree.

[1, 2] In the course of this hearing, the B. of R. T., the B. of L. E., Montgomery, and Farquharson offered an amendment to their answer, denying the allegations of the complaint concerning plaintiff's fixed policy to prevent the unionizing of plaintiff's employees, alleged as recognized and agreed to by each and every one of the plaintiff's employees, and denying that said policy was to deal with said employees as to all matters and things properly arising between said employer and employees only as individuals, and not through any organization pretending to represent them, and denying that the said defendants knew of said terms of employment.

Defendants, in their answer filed June 19, 1920, or more than a year before the trial, did not deny these allegations of the plaintiff's complaint, and under rule 30 of the New Equity Rules (201 Fed. v, 118 C. C. A. v) of 1912 the failure of the defendants to deny such allegation was a confession that they were true. But under the rule the answer might have been amended by leave of the court or judge upon reasonable notice, so as to put the averments of the complaint in issue if justice so required.

No notice had been given of this amendment, or of an application to the court for leave to amend, and no showing was made explaining the delay in presenting such amendment, nor was there any showing made at any time that the matters alleged and set forth in the denials were true, or that justice required the allowance of such amendment. That justice did not so require was determined by the fact that, while the question of a contractual relation between the plaintiff and its employees had not been denied on the original hearing, the allegations of the complaint in that respect had been treated as true upon the pleading and evidence before the court; and the question as to the legal consequences to be drawn from the admitted fact was considered and passed upon by this court upon the sufficiency of the complaint under the Act of October 15, 1914 (Clayton Act) and the case of Hitchman Coal & Coke Co. v. Mitchell, 245 U. S. 229, 38 Sup. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461.

No application was made to this court for a rehearing upon the ground that that question was not in issue in the case. On the contrary, we find that it was one of the controlling questions discussed in the briefs. Moreover, it does not appear defendants were prejudiced by the ruling of the court, since the evidence in the record shows that plaintiff introduced evidence and proved the allegation of the complaint as though it had been in issue. We are of the opinion that the court did not abuse its discretion in refusing the defendants leave to file the proposed amendment to its answer to renew a controversy the facts of which had already been proven and fully determined by the court.

[3] It is contended, however, that, conceding that there were contractual relations between the plaintiff and its employees, as stated in the complaint, the contract was in violation of law under section 679 of the Penal Code of California, which provides:

"Any person or corporation within this state, or agent or officer on behalf of such person or corporation, who shall hereafter coerce or compel any person or persons to enter into an agreement, either written or verbal, not to join or become a member of any labor organization, as a condition of such person or persons securing employment or continuing in the employment of any such person or corporation, shall be guilty of a misdemeanor."

In Coppage v. State of Kansas, 236 U. S. 1, 26, 35 Sup. Ct. 240, 59 L. Ed. 441, L. R. A. 1915C, 960, the Supreme Court of the United States held a similar statute in Kansas "repugnant to the 'due process' clause of the Fourteenth Amendment, and therefore void." We are of the opinion that this decision is controlling in this case, and that the statute of the state is void.

[4] The next question is: Was the evidence sufficient to support the decree of the District Court under sections 6 and 20 of the Act of October 15, 1914 (38 Stats. 730, Clayton Act [Comp. St. §§ 8835f, 1243d]), and the law as declared by the Supreme Court in a number of cases, among others Hitchman Coal & Coke Co. v. Mitchell, 245 U. S. 229, 38 Sup. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461, Duplex Printing Co. v. Deering, 254 U. S. 443, 41 Sup. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196, and American Steel Foundries v. Tri-City Central Trades Council, 257 U. S. 184, 42 Sup. Ct. 72, 66 L. Ed. 189?

The defendants J. A. Farquharson and M. E. Montgomery were at the times mentioned in the complaint officers of the B. of R. T. and the B. of L. E., respectively. They did not reside in Los Angeles, and were not employed by the plaintiff in any capacity whatever. The B. of R. T. and the B. of L. E. were also without any business relation or employment with the plaintiff. The defendant Charles M. Herb was a switchman in the employ of the Southern Pacific Company, and Arlis N. Miller was a switchman in the employ of the Santa Fé Company, both companies operating transcontinental steam railways. Neither Herb nor Miller were employed by plaintiff, but both were active in the campaign for membership among plaintiff's employees, and in organizing the local lodges of the B. of R. T. and B. of L. E. in Los Angeles.

Farquharson and Montgomery arrived in Los Angeles about June 21, 1918. At that time both brotherhoods were actively engaged in a campaign for members for their respective organizations from the employees of the plaintiff. On June 25, 1918, defendants Montgomery and Farquharson, claiming to represent their respective brotherhoods, wrote to Paul Shoup, plaintiff's president, stating that, accompanied by committees representing motormen, trainmen, and yardmen respectively, they requested a conference to discuss matters pertaining to plaintiff's employees in the classes mentioned. On June 27, 1918, Mr. Shoup replied to the effect that no benefit could be derived from such a conference, for the reason that the company did not recognize the organizations mentioned, or any other organizations in connection with its relations with its employees, which had been agreeably maintained for many years. Any such conference would therefore merely lead to misunderstandings. Mr. Shoup inclosed in his letter a circular which had been issued to the employees of the company under date of June 5, 1918, stating the position of the company.

The circular is too long to be inserted in this opinion, but it conveyed the information to the employees that the recommendations of the Railroad Wage Commission, as modified and adopted by the Director General of the federally controlled lines, had been adopted by the plaintiff as the basis of increasing its wages, effective June 1st; that the plaintiff was not a federal line, but, as the recommendations of the Wage Commission were based on living conditions throughout the country, they had been adopted by the plaintiff. The circular stated that the new rates of pay would run about 40 per cent. over those in effect in December, 1915, in the large majority of cases.

The circular stated further that the plaintiff paid no dividends, and owing to jitney bus competition and development of good road transportation had not been able to earn interest on its debt. The cost of running the road—that is, the operating expenses—had, therefore, an unusually close relationship to the money that was taken in, and the pay roll was the largest item of operating expenses. In the course of the circular, Mr. Shoup said:

"I deeply deplore the effort being made, originating outside this company, to give allegiance elsewhere, and through outside and unknown channels, having no relationship to our conditions, to attempt to influence our family affairs and without responsibility for results."

Mr. Shoup said further:

"There is certainly no need for any such organization on the Pacific Electric. Employees can at any time discuss to a conclusion with the proper officers any question of mutual interest and be assured of a square deal."

The activities of the defendants continued in bringing plaintiff's employees into the organizations named, and on July 2, 1918, Montgomery and Farquharson addressed a letter to Mr. Shoup (received by him about 1:30 p. m. on that day), in which it was stated that the matter had been submitted to plaintiff's employees in the form of a strike ballot, and they had by an overwhelming vote authorized Montgomery and Farquharson to advise Mr. Shoup that plaintiff's motormen, trainmen, and yardmen would be withdrawn from the service of the company at

7 p. m. on July 2d, unless the plaintiff was prepared to discontinue the policy of discrimination against its employees because of joining these organizations, and further agree to not take any action against any of them because of their activities in these organizations, and further agree to meet Montgomery and Farquharson and committees representing plaintiff's motormen, trainmen, and yardmen and recognize these organizations.

Mr. Shoup, replying to this letter, said:

"Your surprising statements will be replied to more fully a little later, but inasmuch as you are about to take a grave responsibility of attempting to interrupt the local transportation service, street car and interurban, of four Southern California counties, including passenger service in connection with shipbuilding plants, army and navy bases, aerial plants, and war industries, it is proper that you should be advised that I cannot meet with your request 'to meet the undersigned and committees representing your motormen, trainmen, and yardmen, and recognize these organizations.' I am willing at all times to meet employés of this company in connection with questions affecting their welfare or the welfare of the company, but I cannot meet committees of your brotherhoods, nor yourself in connection with such matters. As to your further demands, I have only to say that it is my desire that no one employed on the Pacific Electric Railway be done any injustice. And whether or not the trade union activities of any employé will work in any way against his interest will depend upon whether or no those activities are legitimate.

"Reference has been made heretofore to cases of certain men discharged from the services of this company, taken up by these men with Secretary of Labor Wilson and referred to Capt. Charles T. Connell as conciliator. You should know in this connection that Capt. Connell, who has been unavoidably away, has in response to my telegram of Saturday last, saying that I was ready to discuss each case, replied that he would meet me at 10:30 a. m. Friday for discussion, if convenient, and I have replied affirmatively. In so far as any question of personal discrimination is a factor in this subject, are you just or courteous to Capt. Connell of the Department of Labor in your abrupt action? I can only conclude that the paramount and governing question with you is one of forcing recognition of your unions upon this company, and through it upon this community."

Pursuant to defendant's threat, at 7 p. m. on July 2, 1918, more than 1,200 of plaintiff's employees withdrew from its service and inaugurated a strike. At 9:30 on the same day the plaintiff filed the bill of complaint herein, and thereupon the District Court issued its temporary restraining order and the service of such order began. The defendant Montgomery testified that, on the temporary restraining order being issued and served, strike matters were immediately deferred until further action of the federal court, and that the strike was called off on July 10th. It appears, however, that while the defendants Montgomery and Farquharson made full detailed reports concerning the strike to the headquarters of their respective organizations, they did not report that the strike had been called off, or even suspended, nor was such information communicated to the local organizations of the defendant brotherhoods, or to any of the individual members thereof. But, notwithstanding this lack of notice, a number of plaintiff's employees voluntarily returned to their work upon the service of the temporary injunction.

On July 3d Mr. Shoup made further reply to letter of Montgomery and Farquharson of July 2d, in which he admitted that, in his state-

ment to the motormen and conductors in the employ of the plaintiff, he had said that they had been asked by outsiders to strike, and that this statement was borne out by the fact that, until defendants and others appeared, there had not been a suggestion of a strike on Pacific Electric for 10 years, and that the relations of the plaintiff to its employees had been most friendly. Mr. Shoup denied explicitly the other statements in defendant's letter, concluding as follows:

"To your country and to this community you have these things to answer for:

"(1) You have on seven hours' notice, because of my declination to recognize your unions, declared a strike on a road which has always gotten along well with its employés and has never had a strike, you using your influence to start this strike and naming the hour without the previous knowledge of the employés.

"(2) You have done this in the face of known necessity for transportation that could not otherwise be adequately given to army post and navy base of the United States, shipbuilding plants, United States aerial plant, and manufacturers of war material, and to other agricultural and horticultural industries tremendously important to the welfare of this community and to the national welfare.

"(3) You have done this in the face of the President's proclamation that there shall be no strike or lockouts during the war, and that workers in the exercise of the right to organize shall not use coercive measures at any time to induce persons to join their organizations or induce employers to bargain or deal therewith.

"(4) You have done this in the face of the fact that the only complaints before the management of this company from dismissed employés were in the hands of Capt. Charles T. Connell, representing the Department of Labor, and you would not even await his opportunity to take action in relation thereto. And you are aware that there are no other claims or controversies or question of any other kind between employés of this company and the company. And you know, also, that I had agreed to meet Capt. Connell and examine into each case. These things you have done at a time when the slogan of the country is 'work or fight,' and every interference with energy employed in a useful way means interference with the national program necessary to the winning of the war."

[5] This correspondence between Mr. Shoup and defendants Montgomery and Farquharson is, in and of itself, part of the res gestæ, and the facts recited by Mr. Shoup in his letters are either admitted or else established by clear and undisputed evidence and the legitimate inference drawn therefrom. From these facts we reach the admitted conclusion that the purpose of the defendants in persuading plaintiff's employees to become members of the defendant brotherhood organizations was that the organizations should be brought into an active relation between the plaintiff and its employees in all matters relating to their employment, thus bringing about a breach of contract between the plaintiff and its employees wherein it had been agreed, and the agreement observed for years, that the plaintiff in all matters relating to such employees should deal directly with them and not through any union or other representative body.

[6] Was it within the legal right of the plaintiff to insist that its employees should deal with it exclusively upon matters pertaining to such employment? In Hitchman Coal & Coke Co. v. Mitchell, 245 U. S. 229, 250, 38 Sup. Ct. 65, 72, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461, the Supreme Court had before it this identical question, and it was held:

"That the plaintiff was acting within its lawful rights in employing its men only upon terms of continuing nonmembership in the United Mine Workers of America is not open to question. * * * This court repeatedly has held that the employer is as free to make nonmembership in a union a condition of employment, as the workingman is free to join the union, and that this is a part of the constitutional rights of personal liberty and private property, not to be taken away even by legislation, unless through some proper exercise of the paramount police power. * * * Plaintiff, having in the exercise of its undoubted rights established a working agreement between it and its employés, with the free assent of the latter, is entitled to be protected in the enjoyment of the resulting status, as in any other legal right. That the employment was 'at will,' and terminable by either party at any time, is of no consequence. In Truax v. Raich, 239 U. S. 33, 38, this court ruled upon the precise question as follows: 'It is said that the bill does not show an employment for a term, and that under an employment at will the complainant could be discharged at any time for any reason or for no reason, the motive of the employer being immaterial. The conclusion, however, that is sought to be drawn is too broad. The fact that the employment is at the will of the parties, respectively, does not make it one at the will of others. The employé has manifest interest in the freedom of the employer to exercise his judgment without illegal interference or compulsion, and, by the weight of authority, the unjustified interference of third persons is actionable although the employment is at will' (citing many cases)."

[7] Does section 20 of the Clayton Act prohibit the court from issuing an injunction against the defendants in this case? The question was before the Supreme Court in Duplex Printing Press Co. v. Deering, 254 U. S. 443, 470, 41 Sup. Ct. 172, 177, 65 L. Ed. 349, 16 A. L. R. 196, where the court referred to the fact that none of the defendants in that case was then or ever had been an employee of complainant, and that complainant at no time had had relations with either of the organizations they represented. Upon this lack of relation between the plaintiff and defendant the court held that the Clayton Act did not prohibit the issuing of an injunction against the defendants. The court said:

"All its provisions are subject to a general qualification respecting the nature of the controversy and the parties affected. It is to be a 'case between an employer and employés, or between employers and employés, or between employés, or between persons employed and persons seeking employment, involving, or growing out of, a dispute concerning terms or conditions of employment.'"

The court also said that the exceptional privilege of exemption from the process of injunction should be confined—

"to those who are proximately and substantially concerned as parties to an actual dispute respecting the terms or conditions of their own employment, past, present, or prospective."

The right of the employee to strike does not give the outsider the right to instigate a strike. The difference is fundamental, says the Supreme Court in the Hitchman Case.

In American Steel Foundries v. Tri-City Central Trades Council, 257 U. S. 184, 42 Sup. Ct. 72, 66 L. Ed. 189, the Supreme Court had before it the prohibitions of section 20 of the Clayton Act forbidding an injunction against, first, recommending, advising, or persuading others by peaceful means to cease employment and labor; second, attending at any place where such person or persons may lawfully be for

the purpose of peacefully obtaining or communicating information, or peacefully persuading any person to work or to abstain from working; third, peacefully assembling in a lawful manner and for lawful purposes.

The court held that if, in their attempts at persuasion or communication with those whom they would enlist with them, those of the labor side adopt methods which, however lawful in their announced purpose, inevitably lead to intimidation and obstruction, then it is the court's duty so to limit what the propagandists do as to time, manner, and place as shall prevent infractions of the law and violations of the right of the employees and of the employer for whom they wish to work; that a restraining order against picketing will advise earnest advocates of labor's cause that the law does not look with favor on an enforced discussion of the merits of the issue between individuals who wish to work, and groups of those who do not, under conditions which subject the individuals who wish to work to a severe test of their nerve and physical strength and courage; that the elements essential to sustain actions for persuading employees to leave an employer are, first, the malice or absence of lawful excuse, and, second, the actual injury.

In that case the interference of the labor organization by persuasion and appeal was to induce a strike against low wages under such circumstances without lawful excuse and maliciously. In the present case the strike was not against lower wages. Lower wages were not proposed. Higher wages were being introduced. But the persuasion was directed by the defendants, who were neither employees nor strikers, but were intruders into the controversy, and were engaged without excuse in an unlawful conspiracy and in an unlawful manner, enticing plaintiff's employees to leave their employment. The activities of the defendants in promoting a strike without lawful excuse, and in drawing plaintiff's employees into a controversy in which they had no substantial cause of complaint, is fully disclosed in the record. These activities interrupted plaintiff's business in intrastate and interstate commerce to its irreparable damage.

We find no errors in the rulings of the court in admitting testimony during the trial of the case. The decree of the District Court is affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
293 F.—44