## BROWN FENCE & WIRE CO. v. FEDERAL TRADE COMMISSION.

### No. 6272.

Circuit Court of Appeals, Sixth Circuit.

May 9, 1933.

John Wattawa, of Washington, D. C., for petitioner.

P. B. Morehouse and M. A. Morrison, both of Washington, D. C. (Robert E. Healy, of Washington, D. C., on the brief), for respondent.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

Petitioner is engaged in the mail order business, selling farm supplies in interstate commerce through the medium of annual catalogues circulated in the rural districts of the United States. It owns and operates three factories manufacturing wire fencing and allied products, such as gates, tools, posts, and stretchers. The remaining articles listed in its catalogue, including fence anchors, barbed wire extension arms, paint, roofing, tires, tubes, baby chicks, brooders, stoves, cream separators, nursery stock, heaters, and sprayers, are purchased from other manufacturers or producers, and shipped directly from the production point to the consumer. These general statements of the nature of the petitioner's business are subject to qualifications, which for present purposes it is unnecessary to note. The petitioner's catalogue contains statements that it sells direct from the factory to the consumer; that the prices for the articles advertised are low because the consumer does not have to pay anything for a middleman's profit and expense; and that such prices are lower than others for the reason that customers pay only the actual cost of manufacture, plus one small profit.

The Commission found inter alia that with reference to articles sold by the petitioner other than fencing and accessories manufactured in its own factories, and such articles as it purchased from other manufacturers at a loss to them, the petitioner is a middleman, and makes a profit by resale, in consequence of which the statements in its catalogue, in so far as they refer to merchandise purchased rather than produced, have a tendency to mislead and deceive the public to induce it to purchase such articles from the petitioner in preference to its competitors, and that the methods involved are unfair methods of competition in interstate commerce and constitute a violation of the Federal Trade Commission Act (15 USCA §§ 41–51).

In response to its findings of fact and conclusions of law, the Commission issued an order directed to the petitioner, its agents, and employees, directing that in connection with the sale in interstate commerce of all articles not manufactured, produced, or grown by the petitioner, they cease and desist from representing directly or by implication, that such articles are by it manufactured, fabricated, produced or grown, and from giving as the reason for its alleged ability to sell such articles at quoted prices the fact that they are furnished direct to the consumer from the petitioner's own factories, mills, nurseries, hatcheries, or other establishments, without any expense or charge for a middleman, or with but one profit plus the manufacturer's cost, when such is not the case.

■ We are asked to set aside the Commission's order on the ground that the evidence does not support its findings in respect to the three prerequisites upon which a desist order must be based: (1) The methods complained of must be unfair; (2) they must be methods of competition in commerce; (3) a proceeding by the Commission to prevent the use of the methods must appear to be in the interest of the public. Federal Trade Commission v. Raladam Co., 283 U. S. 643, 51 S. Ct. 587, 75 L. Ed. 1324, 79 A. L. R. 1191. The petitioner's denial of unfair methods rests mainly upon the assertion that the statements "Direct from factory," "Direct to you," "From factory to you," "Factory prices," and similar phrases used in the catalogue are literally true and so do not tend to mislead. Its contention that the methods are not methods of competition in commerce is based principally upon an offer to prove by the catalogues of other mail order houses that 98 per cent. of petitioner's competitors in the mail order business use such terms as "Factory prices" and "From factory to you" with respect to goods which they do not themselves manufacture, and that this is the custom in the mail order business. This evidence was excluded by the Commission, and its ruling is assigned as error.

■ Aside from a question of substantial competition that may still exist by reason of 2 per cent. of mail order houses refraining from employing challenged methods, there still remains the competition, undoubtedly substantial, of those who sell similar products through retail stores, agents, or jobbers. The excluded testimony did not reach, nor purport to reach, that sort of competition. The contention that such competition is not competition in commerce is clearly without merit. But without regard to whether the offered testimony substantially covers the competitive field, it was not conclusive for another reason. The petitioner offered to prove that the phrases "Factory prices," "Direct from

factory," and "From factory to you" are commonly used in the mail order business, but the petitioner itself goes far beyond this. Assuming for the moment that there is no implication in such phrases that the factory referred to is one owned, operated, and controlled by the petitioner, other statements in the catalogue leave no room for doubt as to the meaning conveyed. In its 1931 catalogue the petitioner used this language: "Every page of this book proves that it pays to buy your fencing and other farm and home needs direct from Jim Brown's factories." "Buying direct from my factories saves at least 33⅓% of your purchasing dollar, because you pay no in-between profit to the dealer and jobber, who add no value, but who add their profits to the original factory cost. You save all this needless expense when you buy direct from my factories." This language, without qualification confining it to those articles actually produced by the petitioner's factories, clearly supports the findings of unfair methods, and the offered proof not purporting to show similar methods by competitors, the language also sustains the finding of unfair competition, even upon the assumption that similar methods by competitors remove the petitioner's practices from control of the Commission's orders.

It also sufficiently appears that the proceeding was in the interest of the public. Whatever may have been our previous understanding of the line of demarcation between methods of trade which result at most in a private wrong and those in which there is specific and substantial public interest (which led to our decision in Royal Milling Company v. Federal Trade Commission, 58 F.(2d) 581), any misapprehension we may have entertained of the exclusive character of the tests to be applied thereto enumerated in Federal Trade Commission v. Klesner, 280 U. S. 19, 50 S. Ct. 1, 74 L. Ed. 138, 68 A. L. R. 838, has now been dispelled by the decision in Federal Trade Commission v. Royal Milling Co. et al., 53 S. Ct. 335, 336, 77 L. Ed. —, decided February 6, 1933. The language of the Supreme Court in that case is peculiarly applicable here: "If consumers or dealers prefer to purchase a given article because it was made by a particular manufacturer or class of manufacturers, they have a right to do so, and this right cannot be satisfied by imposing upon them an exactly similar article, or one equally as good, but having a different origin."

A remaining contention must be noted. In the instant case the Commission produced

no direct testimony tending to show that any of the petitioner's customers were imposed upon or deceived by the representations made in its catalogue, and it is claimed that such omission is fatal to the case against it. We know of no reason why reasonable factual inference may not be the basis for the fact findings of the Commission as well as direct evidence. Price is so fundamental a factor in merchandising, and so persuasive in drawing customers to one competitor and from others, that it seems superfluous to demand direct proof of the efficacy of methods, frankly relied upon, to accomplish the results now denied.

The order of the Commission is sustained.