## BOCKENSTETTE et al. v. FEDERAL TRADE COMMISSION.

### No. 2582.

Circuit Court of Appeals, Tenth Circuit.

March 4, 1943.

370

George M. Brewster, of Topeka, Kan., for petitioners.

Joseph J. Smith, Jr., of Washington, D. C. (W. T. Kelley, of Washington, D. C., on the brief), for respondent.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

By this appeal, petitioners challenge a cease and desist order of the Federal Trade Commission directing them to cease and desist from practices in commerce in violation of the Federal Trade Commission Act, 15 U.S.C.A. § 45.

Petitioners own and operate a large hatchery at Sabetha, Kansas. They hatch eggs and sell the baby chicks in many states of the union. They engage intensively in advertising by use of the mails, newspapers, and by other methods usually employed by advertisers. The Commission found as a fact that the following statements and representations made by petitioners were false and misleading:

"Each female has made her egg record in a previous year in an egg laying contest, under the R. O. P. supervision, or has our home trapped record."[1]

"They are a choice group of individually wing banded females from a select group of R.O.P. Rhode Island Whites and individually pedigreed hens produced by our Contest Pen Mating."

"Individually pedigreed males from R.O.P. trap nested dams head these matings."

"9,400 More Eggs Per Year from Each 100 Hens."

"These gratifying results are being obtained by our customers with Blue Ribbon Chicks."

"Every hen in these flocks lay an egg daily."

"Based on actual unsolicited letters, we don't believe there is a breeding farm or hatchery anywhere that can duplicate our record for customer results. Figures taken from these customers' letters prove that blue ribbon breeding is enabling our customers to produce eggs at from ⅓ to ½ the cost of producing them with birds of ordinary breeding. Our 1940 chicks will do even better."

"4 Weeks' insurance chick buyers' protection against losses up to 4 weeks."

Petitioners admittedly made the representations complained of in their advertisements. Their contention is that the state-

---

[1] R. O. P. is an abbreviation of U. S. Record of Performance. It represents a program of the National Poultry Improvement Plan for the improvement of poultry produced in hatcheries. It is administered through state agencies by the Bureau of Animal Industry of the U. S. Department of Agriculture. Members of the Association are called R. O. P. operators and chickens produced and maintained by such an operator under the rules and regulations of the Association are R. O. P. stock. They cease to be R. O. P. stock when they leave the pens of an R. O. P. operator or when he quits the Association.

ments are true and not misleading, and that the findings and conclusions of the Commission are without support in the evidence.

**■■** Words and sentences may be literally and technically true and yet be framed in such a setting as to mislead or deceive. R.O.P. has a well defined and generally understood meaning in the chicken and egg production industry. An R.O.P. operator is one who belongs to the Association, subscribes to its rules, and produces eggs and chickens under its rules and regulations. An R.O.P. chicken is one produced and maintained by an R.O.P. operator. When it leaves an R.O.P. operator's pens, it ceases to be an R.O.P. chicken. Petitioners admit that the term R.O.P. has a trade value. It would be only natural for the ordinary person who read that petitioners' hens "are a choice group of individually wing banded females from a select group of R.O.P. Rhode Island Whites", or that "individually pedigreed males from R.O.P. trap nested·dams head these matings", to conclude that the advertiser was an R.O.P. operator and that the stock was R.O.P. stock. Petitioners are not R.O.P. operators. Neither do they have R.O.P. chickens as that term is used in the business. The Commission's finding that the statements referring to R.O.P. are misleading finds ample support in the record.

**■** Petitioners admit that the representation that every hen in these flocks lays an egg daily is "rather broad." They attempt an explanation as to how this statement came to be made. Be that as it may, it was made, and the effect thereof is clear. It justifies the finding and order of the Commission based thereon.

**■** It is urged that the finding that the representation that "4 Weeks' insurance chick buyers' protection against losses up to 4 weeks", was false, is not supported by the evidence. It is admitted that this exact language was used and disseminated by advertisement among prospective buyers. There is no claim that petitioners actually protected their customers against all loss for four weeks. It is urged that this was not a representation that petitioners would indemnify a purchaser against all loss for four weeks and that it would require "a tremendous stretch of the imagination to give it such a meaning." It appears to us that it would require a breakable stretch of the imagination to conclude that this language meant anything other than that it insured against all loss for four weeks.

**■** Throughout their brief, petitioners stress the fact that there is no evidence that any person was actually deceived by these advertisements. There is some evidence that persons who read the advertisements drew an erroneous conclusion therefrom. It is not necessary, however, for the Commission to find that actual deception resulted. It is sufficient to find that the natural and probable result of the challenged practices is to cause one to do that which he would not otherwise do, Pep Boys— Manny, Moe & Jack, Inc., v. Federal Trade Commission, 3 Cir., 122 F.2d 158; Brown Fence & Wire Co. v. Federal Trade Commission, 6 Cir., 64 F.2d 934, and that the matter is of specific public interest. Federal Trade Commission v. Royal Milling Co., 288 U.S. 212, 53 S.Ct. 335, 77 L.Ed. 706; Federal Trade Commission v. Raladam, 283 U.S. 643, 646, 51 S.Ct. 587, 75 L.Ed. 1324, 79 A.L.R. 1191.

**■** Other findings of the Commission are challenged as not being supported by evidence. We have examined the evidence upon which each finding rests, with particular care. It would serve no useful purpose and would only unnecessarily encumber the record and legal publications to delineate in detail all the evidence and inferences reasonably deducible therefrom upon which these findings rest. It is our conclusion that the findings of fact and the conclusions of the Commission find support in the evidence and are therefore binding on us.

The order of the Commission will be enforced.