## FEDERAL TRADE COMMISSION v. ROYAL MILLING CO. ET AL.

No. 393. Argued January 20, 1933.—Decided February 6, 1933.

*Assistant to the Attorney General John Lord O'Brian*, with whom *Solicitor General Thacher* and *Messrs. Charles H. Weston, William G. Davis, Hammond E. Chaffetz*, and *Robert E. Healy* were on the brief, for petitioner.

*Mr. Thomas H. Malone* for respondents.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.*

This writ brings here for consideration six orders made by the Federal Trade Commission under § 5 of the Federal Trade Commission Act, c. 311, 38 Stat. 717, 719, Title 15, U. S. C., § 45, which declares that unfair methods of competition in interstate commerce are unlawful. Proceeding under the act[1] the commission filed separate com-

---

* The opinion was announced by the Chief Justice, Mr. Justice Sutherland being absent from the Bench.

[1] "Whenever the commission shall have reason to believe that any such person, partnership, or corporation has been or is using any unfair method of competition in commerce, and if it shall appear to the commission that a proceeding by it in respect thereof would be to the interest of the public, it shall issue and serve upon such person, partnership, or corporation a complaint stating its charges in that respect, and containing a notice of a hearing upon a day and at a place therein fixed at least thirty days after the service of said com-

plaints against respondents, each of whom operates a business, either as a corporation, partnership or an individual, in the City of Nashville, Tennessee. All are engaged in preparing for the market self-rising flour and plain flour. and selling the same in interstate commerce. None of them grind from the wheat the flour which they thus prepare and sell, but only mix and blend different kinds of flour purchased from others engaged in grinding. After being mixed and sifted, the flour, either plain or made self-rising, is packed into bags for the market. Most of the concerns grinding wheat into flour and selling in the same market also make self-rising flour and blended plain flour, ground from different sorts of wheat.

One of the respondents does business under the names, "Royal Milling Company," "Richland Milling Company," and "Empire Milling Company." The others use trade names of similar import, all containing the words "milling company," or "mill," or "manufacturer of flour"—words which are commonly understood by dealers and the purchasing public to indicate concerns which grind wheat into flour.

There are other concerns engaged in the business of producing plain and self-rising flour, by a process of mixing and blending, and selling the product in the same market in competition with respondents and with the grinders; but these do not name themselves millers, mills,

---

plaint. . . . If upon such hearing the commission shall be of the opinion that the method of competition in question is prohibited by this Act, it shall make a report in writing in which it shall state its findings as to the facts, and shall issue and cause to be served on such person, partnership, or corporation an order requiring such person, partnership, or corporation to cease and desist from using such method of competition.

"The findings of the commission as to the facts, if supported by testimony, shall be conclusive."

or milling companies, or hold themselves out in any way as grinders of grain. The business involved is large and the competition among the several concerns substantial; and the use of the enumerated trade names by the respondents tends to divert and does divert business from both the grinders and those blenders who do not use such trade names or an equivalent therefor. Respondents have circulated written and printed circulars among the trade which either directly assert, or are calculated to convey the impression, that their product is composed of flour manufactured by themselves from the wheat. These statements and the use of the trade names under which respondents do business have induced many consumers and dealers to believe that respondents are engaged in grinding from the wheat the product which they put out. The respondents, early in the proceeding before the commission, offered " to place on their letterheads, bags, invoices, etc., in conspicuous lettering the words: ' Not Grinders of Wheat.' " This offer the commission evidently thought it unnecessary to consider, in view of the more comprehensive conclusion which it reached as to the remedy.

The findings of the commission, supported by evidence, in substance embody the foregoing facts, and much else which for present purposes it is unnecessary to repeat. From these findings the commission concluded that the practices of respondents were to the prejudice of their competitors and of the public and constituted unfair methods of competition within the meaning of § 5 of the Federal Trade Commission Act. Thereupon, the commission issued its orders against respondents to cease and desist from carrying on the business of selling flour in interstate commerce under a trade name or any other name which included the words " milling company," or words of like import, and from making representations, designed to affect interstate commerce, that they or either of them

manufacture flour or that the flour sold by them comes direct from manufacturer to purchaser, etc.

Upon review the circuit court of appeals set aside all orders of the commission, upon the ground that the proceeding by the commission did not appear to be in the interest of the public. 58 F. (2d) 581.

To sustain the orders of the commission, three requisites must exist: (1) that the methods used are unfair; (2) that they are methods of competition in interstate commerce; and (3) that a proceeding by the commission to prevent the use of the methods appears to be in the interest of the public. *Federal Trade Comm'n* v. *Raladam Co.*, 283 U. S. 643, 646–647. Upon the first two of these we need take no time, for clearly the methods used were unfair and were methods of competition. *Federal Trade Comm'n* v. *Winsted Co.*, 258 U. S. 483, 492–494; *Federal Trade Comm'n* v. *Raladam Co.*, *supra*, at pp. 651–652.

We also are of opinion that it sufficiently appears that the proceeding was in the interest of the public. It is true, as this court held in *Federal Trade Comm'n* v. *Klesner*, 280 U. S 19, that mere misrepresentation and confusion on the part of purchasers or even that they have been deceived is not enough. The public interest must be specific and substantial. In that case (p. 28) various ways in which the public interest may be thus involved were pointed out; but the list is not exclusive. If consumers or dealers prefer to purchase a given article because it was made by a particular manufacturer or class of manufacturers, they have a right to do so, and this right cannot be satisfied by imposing upon them an exactly similar article, or one equally as good, but having a different origin. Here the findings of the commission, supported by evidence, amply disclose that a large number of buyers, comprising consumers and dealers, believe that the price or quality or both are affected to their advantage by the fact

that the article is prepared by the original grinder of the grain. The result of respondents' acts is that such purchasers are deceived into purchasing an article which they do not wish or intend to buy, and which they might or might not buy if correctly informed as to its origin. We are of opinion that the purchasing public is entitled to be protected against that species of deception, and that its interest in such protection is specific and substantial. *Federal Trade Comm'n* v. *Balme,* 23 F. (2d) 615, 620. Compare *Federal Trade Comm'n* v. *Winsted Co., supra; Ohio Leather Co.* v. *Federal Trade Comm'n,* 45 F. (2d) 39, 41. There is nothing in the *Klesner* case to the contrary.

Although we sustain the commission in its findings and conclusions to the effect that the use of the trade names in question and the misstatements referred to constituted unfair methods of competition within the meaning of the act, and that its proceeding was in the interest of the public, we think under the circumstances the commission went too far in ordering what amounts to a suppression of the trade names. These names have been long in use, in one instance beginning as early as 1902. They constitute valuable business assets in the nature of good will, the destruction of which probably would be highly injurious and should not be ordered if less drastic means will accomplish the same result. The orders should go no further than is reasonably necessary to correct the evil and preserve the rights of competitors and public; and this can be done, in the respect under consideration, by requiring proper qualifying words to be used in immediate connection with the names. See *N. Fluegelman & Co.* v. *Federal Trade Comm'n,* 37 F. (2d) 59, 61; *Federal Trade Comm'n* v. *Cassoff,* 38 F. (2d) 790, 791; *Federal Trade Comm'n* v. *Good-Grape Co.,* 45 F. (2d) 70, 72. Compare *Herring-Hall-Marvin Safe Co.* v. *Hall's Safe Co.,* 208 U. S. 554, 559; *Warner & Co.* v. *Lilly & Co.,*

265 U. S. 526, 532; *R. Guastavino Co.* v. *Comerma,* 184 Fed. 549; *Warshawsky & Co.* v. *A. Warshawsky & Co.,* 257 Ill. App. 571, 584 *et seq.* This is a matter which the commission has not considered but which, as the body having primary jurisdiction, it should, in the first instance, consider and determine. And in doing so it will be enough if each respondent be required by modified order to accompany each use of the name or names with an explicit representation that respondent is not a grinder of the grain from which the flour prepared and put out is made, such representation to be fixed as to form and manner by the commission, upon consideration of the present record and any further evidence which it may conclude to take. In respect of other particulars, the orders of the commission are sustained.

The decree below, therefore, will be reversed, and the proceeding remanded to the circuit court of appeals to be disposed of in conformity with this opinion.

*Decree reversed.*

MR. JUSTICE MCREYNOLDS and MR. JUSTICE ROBERTS are of opinion that the decree below should be affirmed.