## FEDERAL TRADE COMMISSION v. CIVIL SERVICE TRAINING BUREAU, Inc.

### No. 7049.

Circuit Court of Appeals, Sixth Circuit.
June 29, 1935.

114

H. D. Michael and M. A. Morrison, both of Washington, D. C. (W. T. Kelley and James W. Nichol, both of Washington, D. C., on the brief), for petitioner.

J. C. Spear, of Cleveland, Ohio (R. J. Davis, of Cleveland, Ohio, on the brief), for respondent.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges. .

ALLEN, Circuit Judge.

This is an application for the enforcement of a cease and desist order of the Federal Trade Commission issued under Section 5 of the Federal Trade Commission Act, title 15, U. S. C., § 45 (15 USCA § 45). The respondent, a correspondence school, engaged in the sale and distribution of courses of study to prepare students for civil service examinations, makes three contentions in its answer:

(1) That the commission was without jurisdiction for the reason that it was constituted for the purpose of dealing with cases involving the sale of commodities in interstate commerce, and that while the respondent conducted an interstate business, it was not dealing in commodities, but was selling a service.

(2) That Section ·5 of the Federal Trade Commission Act contemplates that the methods of unfair competition declared unlawful must be such as to result in a practical monopoly in the trade, and that no such unfair competition has been shown to exist.

(3) That the evidence adduced before the commission is insufficient to support the order.

■ The first contention is untenable. The act applies to unfair methods of competition "in commerce," commerce being defined as including "commerce among the several States." Title 15, U. S. C., § 44 (15 USCA § 44). In International Textbook Co. v. Pigg, 217 U. S. 91, 107, 30 S. Ct. 481, 54 L. Ed. 678, 27 L. R. A. (N. S.) 493, 18 Ann. Cas. 1103, the court held that intercourse or communication between persons in different states by means of correspondence through the mails is commerce among the states within the meaning of the Constitution, especially where such intercourse and communication relate to regular continuous business and to the making of contracts and the transportation of books, papers, etc., pertaining to such business. That decision squarely involved the selling of service by a correspondence school in interstate transactions, and is controlling here.

■ The second contention is also without merit.

The jurisdiction of the commission to issue a cease and desist order depends upon the existence of three prerequisites: (1) That the methods complained of are unfair; (2) that they are methods of competition in interstate commerce; and (3) .that the proceeding by the commission to prevent the use of the methods appears to be in the interest of the public. Federal Trade Commission v. Raladam Co., 283 U. S. 643, 51 S. Ct. 587, 75 L. Ed. 1324, 79 A. L. R. 1191; Federal Trade Commission v. Royal Milling Co., 288 U. S. 212, 216, 53 S. Ct. 335, 77 L. Ed. 706.

Neither the statute nor the decisions require that unfair methods of competition must constitute practically a monopoly in the trade in order to fall within the prohibitions of the act.

■ With reference to the third contention, having in view the rule that the findings of the commission are conclusive if supported by evidence (Federal Trade Commission Act, § 5, title 15, U. S. C., § 45 (15 USCA § 45); Federal Trade Commission v. Winsted Hosiery Co., 258 U. S. 483, 491, 42 S. Ct. 384, 66 L. Ed. 729; Federal Trade Commission v. Algoma Lumber Co., 291 U. S. 67, 73, 54 S. Ct. 315, 78 L. Ed. 655), we think the evidence sufficient to sustain the findings

upon which are based paragraphs 1, 2, 3, and 5 of the commission's order.[1]

■ As to paragraphs 1 and 3, the respondent admits that it still uses the words "Civil Service" and "Bureau" in its name. The commission found in substance that the name of the respondent has a tendency to create, and has actually created, the belief that it represents or has an official connection with the United States Civil Service Commission, or that it is a bureau or agency of the United States government.

The similarity of the name "Civil Service Training Bureau, Inc.," with that of the United States Civil Service Commission in itself operates to create the false impression that this private institution has a governmental connection. A number of witnesses testified in substance that the name made them think that the school was an adjunct of the government. These facts justified the commission in issuing that part of its order embodied in paragraphs 1 and 3.

■ The requirement of paragraph 2 of the order was based upon the commission's finding that while the respondent claimed to offer instruction for the civil service, qualifying its students to take examinations fitting them for certain positions, no examinations for those positions were held. Testimony was given to the effect that few, if any, civil service examinations were held in the lines in which respondent gave instruction, and hence applicants were misled. Numerous witnesses stated that no examination or examinations for which they had qualified had ever been held. This paragraph of the order was based on findings sustained by ample evidence.

■ As to the requirement in paragraph 5, misleading and "blind" advertisements had been used, implying that there were government jobs available, and that the respondent was an agent or representative of the government. While this practice was modified, the answer shows that "blind" advertisements were still being used after the filing of the complaint. However, this part of the order should be modified so as to prohibit only untruthful representations as to the existence of government jobs or that persons are wanted to fill such jobs. There may be times in the future when such representations can truthfully be made. With this modification, the facts adduced justify the issuance of paragraph 5 of the order.

■ With reference to paragraphs 4 and 6, the practices described in these paragraphs which were admitted to have been carried on formerly by the respondent were demonstrated by uncontroverted evidence to have been discontinued in 1932. The misrepresentations as to the number of civil service employees, the nature of the positions available, etc., were made by respondent's salesmen, aided in their interviews by an inaccurate booklet. Respondent suppressed the booklet and warned the salesmen not to use the in-

---

[1] "It is ordered that respondent * * * cease and desist from the following practices, to wit:

"1. The use of the term 'civil service' and the word 'Bureau', or either of them, in the name under which said business is conducted, as aforesaid, or of any other word or expression therein which implies or suggests any connection with the Civil Service Commission or the United States Government, or the use of any such representation made in any other manner.

"2. Designating any course offered by any term other than by such a term as may correspond to some classification used by the United States Civil Service Commission at the time such course is offered and for which examinations are held by said Commission.

"3. Representing that respondent can assist its students in getting Government positions other than by assisting them in preparing for examinations.

"4. Representing the number of civil-service employees, the number of appointments made or to be made, the time, number or certainty of civil-service examinations, or the period of duration of civil-service jobs other than as such representations may represent the actual facts as they exist at the time such representations are made.

"5. The use of any advertisement which by its wording or by the heading under which it is placed, or otherwise, represents or implies that Government jobs are offered or are to be had or that persons are wanted to fill such jobs, or that the advertisement is that of the United States Government or of a representative or agent thereof.

"6. The use of any contract form which represents or implies that a Government job is guaranteed."

116

formation. A misleading guaranty of refund which had been employed in respondent's contract form was actually interpreted as constituting the guaranty of a government job. This was altered, and these practices were discontinued by respondent prior to September 16, 1933, when the proceeding before the commission was instituted. The commission is not authorized to issue a cease and desist order as to practices long discontinued, and as to which there is no reason to apprehend renewal. L. B. Silver Co. v. Federal Trade Commission (C. C. A.) *292 F. 752*; cf. United States v. U. S. Steel Corp., 251 U. S. 417, 445, 40 S. Ct. 293, 64 L. Ed. 343, 8 A. L. R. 1121.

The order of the commission is modified by the elimination of paragraphs 4 and 6, and paragraph 5 is modified so as to prohibit untruthful representations that government jobs are offered or are to be had, or that persons are wanted to fill such jobs, and is otherwise affirmed. Paragraphs 1, 2, and 3 of the order are affirmed. The respondent, its officers, directors, agents, representatives, servants, and employees are ordered to comply with the order of the commission as modified and affirmed.