## FEDERAL TRADE COMMISSION v. ARMY AND NAVY TRADING CO.

### No. 6793.

United States Court of Appeals for the
District of Columbia.

Decided Jan. 4, 1937.

Martin A. Morrison and James W. Nichol, both of Washington, D. C., for petitioner.

Joseph B. Stein, of Washington, D. C., for respondent.

Before MARTIN, C. J., and ROBB, VAN ORSDEL, GRONER, and STEPHENS, JJ.

STEPHENS, J.

This is a proceeding brought under Section 5 of the Federal Trade Commission Act, 38 Stat. 719 [as amended by 43 Stat. 939, 15 U.S.C.A. § 45] by the petitioner, the Federal Trade Commission, hereafter called the Commission, to enforce an order issued by it on November 26, 1935, requiring the respondent, the Army and Navy Trading Company, hereafter called the Trading Company, to cease and desist from using the words "Army and Navy," or either of them, in connection with its corporate name.

Following the usual procedure under the Act, the Commission issued a complaint against the Trading Company charging that the words "Army and Navy" in its name were misleading, and that their use was to the injury of competitors and the public. The Trading Company answered denying this. A hearing was had before an examiner of the Commission, and then before the Commission itself. Thereupon the Commission made findings of fact which, so far as here pertinent, were in substance and effect that: The Trading Company, a Maryland corporation, has, since its organization in 1922, maintained its principal place of business in Washington, D. C., and carried on business there. It was organized chiefly for the purpose of buying from the Army and Navy Departments of the United States Government certain surplus, reject and refuse goods and reselling the same. From 1922 until about 1927, between 85% and 90% of the merchandise offered for sale by the Trading Company was procured from the Army and Navy Departments, either directly or indirectly, there being during those years opportunity to secure large lots of various kinds of merchandise from the Departments. About 1927 the Departments began sharply to curtail the quantity of goods offered for sale, and since 1932 have offered virtually none. They were offering none at the time of the Commission's order. In 1932 the stock of merchandise of the Trading Company contained only about 15% to 18% of goods purchased from the Army and Navy Departments. The Trading Company causes its corporate name "Army and Navy Trading Company" to be displayed in large signs about its mercantile establishment, and in trade journals and circulars, and in advertisements and in daily newspapers and other periodicals, with the words "Army and Navy" as prominently featured therein as other portions of the name. Various members of the purchasing public, upon observing such use of the words "Army and Navy," have been led into the belief that

the goods to be purchased in the Trading Company's store were substantially all, if indeed not all, procured from the Army and Navy Departments, and into the belief that they were of the quality and nature used by those Departments and that a substantial bargain with reference to price and quality would be obtained at the Trading Company's store; and a substantial number of such members of the purchasing public have been induced by such beliefs to make purchases from the Trading Company. The use by the Trading Company of the words "Army and Navy" as above described causes a diversion of trade from competitors of the Trading Company who offer for sale merchandise which, like the bulk of the stock of the Trading Company, is procured from ordinary markets, but who do not use the words "Army and Navy" in connection with their trade names; and the use of the words "Army and Navy" by the Trading Company causes substantial injury to substantial competition within the District of Columbia.

From the facts thus found by the Commission it concluded that the use of the words "Army and Navy" in the Trading Company's name is to the prejudice and injury of competitors and the public and an unfair method of competition in commerce and a violation of Section 5 of the Act.

The Commission ordered the Trading Company to cease and desist from:

"(1) Using in connection with its corporate name the words 'Army and Navy' or either of them.

"(2) Advertising or causing to be advertised in any circulars, trade journals, daily newspapers, or other periodicals the words 'Army and Navy' or either of them, descriptive of or in connection with any merchandise to be sold or offered for sale to the public, unless in fact the words 'Army and Navy' be used specifically in connection and conjunction with particular merchandise actually procured from the Army or Navy Department of the United States Government.

"Provided, however, that for a period of two years from the date of the service of this order upon respondent, the respondent shall be permitted to use in connection with such corporate or trade name as it might assume the words:

" 'Formerly Army and Navy Trading Company.' "

The only issue raised by the Trading Company's answer to the Commission's complaint was that respecting the misleading character and effect of the use of the words "Army and Navy" in the Company's name, and the finding of fact adverse to the Trading Company on this issue is the only finding attacked by it.

The findings of the Commission if supported by evidence are conclusive. Federal Trade Commission v. Winsted Hosiery Co., 258 U.S. 483, 42 S.Ct. 384, 66 L.Ed. 729; Federal Trade Commission v. Algoma Lumber Co., 291 U.S. 67, 54 S.Ct. 315, 78 L.Ed. 655. We have examined the record. There is evidence therein to support the finding attacked. We shall not assume to review the evidence in detail, but it is worthy of comment that it was made to appear through the testimony of the secretary and treasurer of the Trading Company itself that the name "Army and Navy Trading Company" was selected for the corporation in order to impress the public with the fact that the stock consisted principally of articles purchased from the Army and Navy Departments—that being so at the time of incorporation—and that there was a response, advantageous to the Trading Company, to this impression; and further that while the percentage of Army and Navy goods in the Trading Company's stock was as high as 90% up to about 1926, there was a rapid decline in the percentage thereafter, and at the time of the hearing before the Examiner, in 1935, only about 10% of the total inventory was of such goods; and further, that purchases of stock at that time were principally made in the open market from commercial manufacturers catering to department stores and various concerns. It is also worthy of comment that several members of the purchasing public testified that in purchasing from a so-called Army and Navy store they expected to find lower prices and better quality merchandise, and to get Army and Navy refuse or salvage goods or goods made up to Army and Navy specifications.

The first of the two issues of law in the case is whether the conclusion of the Commission that the use of the words "Army and Navy" in the Trading Company's name is an unfair method of competition is justified. It is. The Supreme Court has ruled that false and misleading representations as to the origin of a commodity constitute an unfair method of competition. Federal Trade Commission v. Royal Milling

Co., 288 U.S. 212, 53 S.Ct. 335, 77 L.Ed. 706. It has ruled similarly in respect of false and misleading representations as to the nature or quality of an article. Federal Trade Commission v. Winsted Hosiery Co., supra; Federal Trade Commission v. Algoma Lumber Co., supra. Accord: Federal Trade Commission v. Civil Service Training Bureau (C.C.A.) 79 F.(2d) 113.

The second issue of law is whether the cease and desist order of the Commission is too broad. The Trading Company contends that the Commission cannot lawfully order suppression of a trade name where the use of qualifying words will eliminate the deception and preserve the rights of competitors and the public, and it asserts that the Commission's order should be modified so as to permit the use of, and it offers to use, in connection with its full trade name "Army and Navy Trading Company," one or more of the following qualifying phrases: "Not Connected with the Army and Navy," "Not Connected with the Government," "Not a Government Store," "Not Affiliated with the United States Government," "We Do Not Handle Exclusively Army and Navy Goods." The Trading Company urges Federal Trade Commission v. Royal Milling Co., supra; N. Fluegelman & Co. v. Federal Trade Commission (C.C.A.) 37 F.(2d) 59; Federal Trade Commission v. Good-Grape Co. (C.C.A.) 45 F.(2d) 70; and Federal Trade Commission v. Cassoff, 38 F.(2d) 790. These cases justify the proposition that the Commission's "orders should go no further than is reasonably necessary to correct the evil and preserve the rights of competitors and public." These were the words of the Supreme Court in the Royal Milling Co. Case. There the word "Milling" imported the grinding of wheat into flour, when in truth the Royal Milling Company only mixed and blended flours purchased from others engaged in grinding. The continued use of the trade name if used together with such qualifying words as "Not Grinders of Wheat" was permitted. In N. Fluegelman & Co. v. Federal Trade Commission, the use of the words "Satinmaid" and "Satinized," which signified a fabric with a satin weave and a silk content, whereas the product in question was of a satin weave but of a cotton content, was permitted provided there was also used the phrase "a cotton fabric," "a cotton satin," "no silk," or equivalent modifying terms. In Federal Trade Commission v. Good-Grape Co., it was held that the name "Good-Grape" and the slogan "Fruit of the Vine," might be used if qualified by words making it appear that the product was an imitation, artificially colored and flavored. In Federal Trade Commission v. Cassoff, the word "shellac," in the trade name "White Shellac" and "Orange Shellac," deceptively imported a product composed solely of genuine shellac gum dissolved in alcohol. The court permitted use of the word "shellac" if there was also used in connection therewith the phrase "shellac substitute" or "imitation shellac," accompanied by the statement that the product was not 100% shellac.

But it will be noted that in these cases the selection of qualifying words effective to eliminate deception was feasible because the names involved made separate and distinct representations in respect of the origin and characteristics of single products, some of which representations were true and some of which were untrue.[1] Therefore, qualifying words could be chosen which would eliminate any deceptive representations and leave standing the truthful ones alone. Thus in Federal Trade Commission v. Royal Milling Co., the qualifying words "Not Grinders of Wheat" indicated definitely that the grain from which the flour is made did not originate with, i. e., was not ground by, the Royal Milling Company, but left standing the representation that the flour was mixed and blended by that Company; and in the other three cases, the qualifying words clearly eliminated the deceptive representations of what the charac-

[1] Thus in Federal Trade Commission v. Royal Milling Co., the representation of the word "Milling" as to mixing and blending of the flour was true, but the representation as to the origin of the flour, i. e., as to by whom it was ground, was untrue. In N. Fluegelman & Co. v. Federal Trade Commission, the representation of the words "Satinmaid" and "Satinized" that the fabric had a satin weave was true, but the representation that it had a silk content was not. In Federal Trade Commission v. Good-Grape Co., the representation of the phrases "Good-Grape" and "Fruit of the Vine" that the product was like grape juice in color and flavor was true, but the representation that it was made of natural grape juice was untrue. In Federal Trade Commission v. Cassoff, the representation of the phrases "White Shellac" and "Orange Shellac" that the product was composed solely of genuine shellac gum dissolved in alcohol was untrue, but the representation that it was like shellac, or that it could be used for the purpose of shellac, was true.

teristics of the products were not, but left standing the true representations as to what the characteristics were. The qualifying words suggested for use in the instant case would not have the effect of wholly eliminating the deception. Use with the trade name "Army and Navy Trading Company" of the phrase "Not Connected with the Army and Navy" would still leave an implication that the Trading Company's goods are purchased from the Army and Navy Departments or are of the character or quality of Army and Navy goods. The same is true of the phrase "Not Connected with the Government," and of the phrase "Not a Government Store," and of the phrase "Not Affiliated with the United States Government." The phrase "We Do Not Handle Exclusively Army and Navy Goods" would imply that a substantial portion of the goods are Army and Navy goods. We think it not feasible to select qualifying words for use with the name "Army and Navy Trading Company" which will be effective to eliminate deception. The stock of goods of the Trading Company is in only an insubstantial portion, if at all, in any sense Army and Navy goods. But the phrase "Army and Navy" in the name "Army and Navy Trading Company" makes the single representation that at least the major portion of the merchandise offered for sale is in some sense Army and Navy goods. This single representation being untrue, it cannot be qualified; it can only be contradicted. The cases urged by the Trading Company and above discussed justify qualification of a trade name where qualification is possible; they do not justify contradiction.

■ In a supplemental memorandum filed before the Commission the Trading Company offered to use with the name "Army and Navy Trading Company" the "qualifying" words "We do not deal in Army and Navy Goods." This phrase is not discussed in the Trading Company's brief filed in this court, and we take it, therefore, that the offer to use it has been abandoned. If not, however, it is clear that it cannot be used because it is contradictory.

■ In one particular we think the order of the Commission is too broad. It cannot be concluded that because at the time of the hearing there was little or no opportunity for the Trading Company to purchase goods in some sense Army and Navy goods, there will not be such opportunity in the future; and the Trading Company

ought not be forbidden to tell the exact truth, whatever it may be, concerning the origin or character of any particular lot of goods. Paragraph (2) of the Commission's order forbids the use of the words "Army and Navy" "unless in fact the words 'Army and Navy' be used specifically in connection and conjunction with particular merchandise actually procured from the Army or Navy Department of the United States Government." The Trading Company may at some time procure a particular lot of goods not purchased by it actually from the Army or Navy Department, but from a jobber or broker who purchased therefrom; or it may procure from a manufacturer or jobber or broker a particular lot of goods made for the Army or Navy Department but rejected for lack of compliance with specifications in some respect although satisfying them in others. Paragraph (2) of the order should, therefore, be modified so as to permit the use of the words "Army and Navy," or either of them, in connection with a particular lot of merchandise, provided such words are used in a manner exactly specifying the origin or character of that particular lot.

Subject to such modification, the order of the Commission is affirmed and the respondent is ordered to comply therewith.