## SHEFFIELD SILVER CO., Inc., v. FEDERAL TRADE COMMISSION.

### No. 370.

Circuit Court of Appeals, Second Circuit.
July 18, 1938.

Jay Leo Rothschild, of New York City (Jay Leo Rothschild and Walter S. Beck, both of New York City, of counsel), for petitioner.

Walter T. Kelly, Chief Counsel, Martin A. Morrison, Asst. Chief Counsel, and James W. Nichol, Sp. Atty., all of Washington, D. C., for respondent.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

This case is before us upon a petition and cross petition brought under section 5 of the Federal Trade Commission Act, 15 U.S.C.A. § 45. The order which the petitioner seeks to have vacated and the Commission seeks to have affirmed, directs the petitioner to cease and desist from "using the word 'Sheffield' in its corporate name or in any other manner, so as to represent or imply that said [petitioner's] electroplated hollow-ware products are 'Sheffield' or are made by the Sheffield process." The principal issue is whether the evidence justifies the Commission's finding of unfair competition.

At the hearing before the trial examiner it was stipulated that the word "Sheffield," as applied to or as descriptive of any silverware, means to the trade a ware made according to a process known as the "Sheffield process" or the "copper rolled process," which is a process whereby silver is welded or fused upon copper according to a process originating in or around Sheffield, England, in approximately 1742; that no Sheffield ware is now manufactured; and such Sheffield silver as may be upon the market today is regarded as an antique or museum piece, and is so sold and carries such a value. The petitioner is a corporation which was organized under the laws of New York in 1908. It manufactures by an electroplating process silver-plated hollow ware which it sells in interstate commerce at wholesale to retail dealers; it makes no sales direct to the consuming public. It is in competition with other manufacturers who also use the electroplating process. The conduct complained of by the Commission is the use by the petitioner of its corporate name upon its letter heads and invoices, upon labels affixed to cartons in which its goods are shipped in commerce, and upon photographs of its products carried by its salesmen. The Commission has found that the name "Sheffield" has become identified in the public mind with a high quality of silverware manufactured by the Sheffield process, and has a sales value when applied to silver-plated ware; and that the petitioner's use as aforesaid of its corporate name has the tendency and capacity to deceive the purchasing public and to induce purchasers to buy its products in the mistaken belief that they are made by the Sheffield process, thereby unfairly diverting trade to the petitioner from its competitors. There is also a finding that the acts of the petitioner serve to place in the hands of unscrupulous retail dealers a means of misleading the purchasing public into the belief that the petitioner's products are manufactured in accordance with the Sheffield process. The Commission has concluded that the petitioner's practices prejudice its competitors and the public, and constitute unfair methods of competition in violation of the Act.

The record is barren of evidence that any one has ever purchased the petitioner's product under the erroneous belief that it was antique Sheffield ware, or modern ware manufactured by the old Sheffield process. Neither the word "Sheffield" nor the petitioner's corporate name appears on its goods; they bear symbols, customarily used on electroplated ware, to indicate electroplating either on a nickel-silver or copper base. The letterheads and invoices give the petitioner's address, either Brooklyn, N. Y., or Jersey City, N. J., and state that it manufactures "silver plated hollow-

ware". The retail dealers to whom the petitioner and its competitors sell are sophisticated merchants. Several witnesses testified, and there was no contradiction, that there was no danger of mistaking the petitioner's electroplated ware for anything other than it was. We can see no basis for a finding that the name "Sheffield" has a sales value when applied to electroplated silver ware. Nor was there testimony that the petitioner's corporate name gives it any advantage over its competitors. The petitioner enjoys a valuable good will, according to the testimony of its officers, but this no doubt has resulted from the quality or price of its wares. The only attempt to prove that the petitioner's name gives to unscrupulous dealers a means of defrauding the ultimate consumer consisted in the introduction of one advertisement by a retailer in Atlanta, Ga. It was stipulated that this was not published at the direction or instance of the petitioner nor with its knowledge. This advertised "Sale 500 Sample Pieces Sheffield Silverware by Sheffield Company ½ Price 2.50 to 18.00 values for 1.25 to 9.00." There is no testimony that any reader of this advertisement understood that it referred to authentic Sheffield ware. Any one who had the slightest knowledge of Sheffield ware would realize that 500 "sample pieces" at the prices advertised could not be genuine old Sheffield. If in fact the retailer was attempting to palm off modern electroplated ware for antique Sheffield, his sins should be visited upon his own head rather than imputed to an innocent manufacturer of the goods who never authorized nor approved the fraud. In our opinion the record does not support the findings upon which rests the conclusion of unfair methods of competition by the petitioner. Its good will resulting from 30 years of business without complaint by any one, should not be destroyed upon a single instance of unauthorized advertising such as this.

None of the authorities upon which the Commission relies involves similar facts. In Federal Trade Comm. v. Winsted Hosiery Co., 258 U.S. 483, 42 S.Ct. 384, 66 L.Ed. 729, labels were attached to the goods which indicated to the consuming public and sometimes to the retail trade that they were pure wool fabrics, contrary to the fact. No false labelling has been done by the petitioner in the case at bar. In Federal Trade Com. v. Royal Milling Co., 288 U.S. 212, 53 S.Ct. 335, 77 L.Ed. 706, the respondents used corporate names containing words, such as "milling company," which are commonly understood by dealers and the purchasing public to indicate concerns which grind wheat into flour. In the case at bar no one has been deceived by the petitioner's corporate name into the belief that its wares are manufactured by the old Sheffield process. While actual deception need not be shown if the necessary effect of a person's acts is to make deception likely, there is nothing in the present record to support an inference that deception is likely. The parties have stipulated that such Sheffield silver as may be upon the market today is regarded as an antique or museum piece and is sold at a corresponding value. Persons who buy antique museum pieces will not mistake for authentic Sheffield the petitioner's low-priced wares, which bear symbols indicating they are electroplated, merely because the manufacturer calls itself the Sheffield Silver Company.

The Commission has sought to sustain its order by the argument that it is justified by the pleadings without regard to the evidence, because the company's denials of the allegations of the complaint were general instead of special as required by Rule V(a) of the Rules adopted by the Commission. The contention is without merit. Assuming without decision that the denials did not comply with the Rule, they were assumed by the Commission to raise issues to be tried before an Examiner, who was appointed to take evidence and before whom both parties introduced extensive testimony. Under such circumstances the complainant should not be allowed to change his theory on appeal. The pleadings will be treated as the parties elected to treat them below. See Kansas & A. V. Ry. Co. v. Dye, 8 Cir., 70 F. 24, 26; Montgomery v. Pacific Elec. Ry. Co., 9 Cir., 293 F. 680, 684.

The order is vacated.