**FIORET SALES CO., Inc., et al. v. FEDERAL TRADE COMMISSION.**

**No. 121.**

Circuit Court of Appeals, Second Circuit.
Dec. 5, 1938.

W. T. Kelley, Chief Counsel, Federal Trade Commission, Martin A. Morrison, Asst. Chief Counsel, and S. Brogdyne Teu, II, and James W. Nichol, Sp. Attys., all of Washington, D. C., for respondent.

Munn, Anderson & Liddy, of New York City (John H. Glaccum, of New York City, of counsel), for petitioners.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Petitioners are engaged in the importation and sale in this country of perfumes in competition with others engaged in interstate commerce. They were charged before the Commission with unfair trade practices in connection with their manufacture and sales, and were directed to cease and desist such practices. The Fioret Company imports from France its perfumes in the form of concentrates or compounds which are blended mixtures of various oil extracts from plants and are usually combined with some animal essence, such as musk. When these concentrates arrive in this country, they are not sold commercially before they are blended with varying percentages of alcohol. After such blending, they are sold to the public as perfumes. The alcohol acts as a diluting medium for the concentrates so that when the perfume is applied to an object, such as a handkerchief, the alcohol evaporates, leaving only the odor of the concentrate perceptible to the senses. On this record it can be assumed that the concentrate uncombined with alcohol is not known to the purchasing public as perfume.

Petitioners in blending used domestic alcohol and marked the finished product in a bottle bearing a label in French, the English translation of which tells that the contents of the bottle was made by Fioret of Paris "and are the exclusive property of FIORET, Inc., for the United States of America where they are completed. All infringements will be vigorously prose-

cuted." Following this French inscription, appears in English, "Bottled in U. S. A."

The Commission found that petitioners were manufacturers of perfume, that the manufacture in the United States was inconsistent with their advertisements describing their products as "imported perfumes", that the use of the label tended to further the impression thus conveyed to the public that they were manufactured in France and held that such practices constituted unfair competition.

The findings of the Commission having support of substantial evidence are binding upon us. Federal Trade Comm. v. Standard Ed. Society, 302 U.S. 112, 117, 58 S.Ct. 113, 82 L.Ed. 141. And where the evidence is conflicting, the finding must stand. L. & C. Mayers Co. v. Federal Trade Comm., 2 Cir., 97 F.2d 365, 367.

The issue presented to us is whether on the facts so found, petitioners are manufacturers of perfume and, if so, are they using unfair methods of competition. The findings, sufficiently supported by the evidence, justify the conclusion that petitioners do not import a perfume but only some of its ingredients which are then combined with American alcohol to produce a marketable product known as perfume. Concentrates alone are not what petitioners usually sell, but their dilutions with alcohol, and it is the alcohol that makes the finished product. Our necessary concern here is to ascertain by whom and where the product is made for use. "Manufacture is transformation—the fashioning of raw materials into a change of form for use." Kidd v. Pearson, 128 U.S. 1, 20, 9 S.Ct. 6, 10, 32 L.Ed. 346. See Allen v. Smith, 173 U.S. 389, 399, 400, 19 S.Ct. 446, 43 L.Ed. 741.

The petitioners must be regarded as manufacturers of perfume within the unfair competition laws. To be sure, they are importers of concentrates; but blending the concentrates with a French alcohol which is imported results in a perfume of different chemical properties and of different odor. The difference between French and American alcohol in its effect upon the blending of perfumes, stands uncontradicted in this record.

By representing their product as an imported perfume, petitioners unfairly compete. The purchaser is unversed in the art of making a finished perfume and to say that a given perfume is imported must mean to him that the entire fluid is imported, not that only 5% of it is. To the purchasers of perfumes imported products are preferable to domestic products. By their conduct, petitioners are infringing upon the interest of the consuming public which purchases under the mistake that it is buying an imported perfume, a product rendered marketable and fit for use. They also compete unfairly with those importers of perfume whose concentrates and alcohol are blended in France and with those tradesmen who import, like petitioners, the concentrates and dilute them with domestic alcohol but who, unlike petitioners, sell their products accurately represented and advise the purchasing public that they are selling a domestic perfume.

There is the representation that the contents is "Bottled in U. S. A.", but there is possible a misleading idea that the fluid was in its entirety made in France and merely bottled here, having been imported in bulk. Again, the inscription in French tends to mislead the public into the belief that the perfume was completed in France; that is to say, the warning in French to infringers of violations of its trade mark without any corresponding English legend, clearly lends itself to stimulating the suggestion already implanted in the purchaser's mind, that the entire product is one imported from France. Such misleading use of a foreign language was said by this court in Coty, Inc., v. Prestonettes, Inc., 2 Cir., 285 F. 501 to be objectionable. Confusion in words created in the public mind has been held to constitute unfair competition. Coty, Inc., v. Le Blume Import Co., D.C., 292 F. 264. It is sufficient to sustain the order, if there is a probable tendency, by petitioner's conduct, to deceive. Coty, Inc., v. Parfums De Grande Luxe, Inc., 2 Cir., 298 F. 865, 870.

Probable injury to particular interests is unnecessary since it is the totality of all interests conceived as the public interest which is decisive. Federal Trade Comm. v. Algoma Lumber Co., 291 U.S. 67, 81, 54 S.Ct. 315, 78 L.Ed. 655; Federal Trade Comm. v. Royal Milling Co., 288 U.S. 212, 217, 53 S.Ct. 335, 77 L.Ed. 706; Federal Trade Comm. v. Raladam Co., 283 U.S. 643, 651, 51 S.Ct. 587, 75 L.Ed. 1324, 79 A. L.R. 1191. The unfair practice may well be avoided by a legend stating that the contents of the package or bottle was bottled and diluted in the United States.

The petition is denied and the order affirmed.