**ALLEN B. WRISLEY CO. et al. v. FEDERAL TRADE COMMISSION.**

No. 6930.

Circuit Court of Appeals, Seventh Circuit.

June 12, 1940.

TREANOR, Circuit Judge, dissenting in part. .

F. W. Sullivan, of Chicago, Ill., for petitioners.

W. T. Kelley, Chief Counsel, and Martin A. Morrison, Asst. Chief Counsel, both of Washington, D. C., Eugene Carmichael, Jr., of Chicago, Ill., DeWitt T. Puckett and James W. Nichol, Sp. Attys., Federal Trade Commission, both of Washington, D. C., for respondent.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

MAJOR, Circuit Judge.

This is a petition to review and set aside a cease and desist order entered April 6, 1939, by the Federal Trade Commission (hereinafter referred to as the "Commission") against petitioners.

On December 24, 1936, the Commission issued its complaint pursuant to Section 5 of the Federal Trade Commission Act of 1914, 15 U.S.C.A. § 45, alleging, in substance, that petitioners were engaged in the business of manufacturing soap and in the distribution thereof in interstate commerce; that petitioners were in substantial competition with those engaged in the manufacture and sale of genuine olive soap, and those engaged in the manufacture and sale of soap, the oil content of which is not wholly olive oil; that in the course and conduct of such business, petitioners sold many kinds of soap, some of which were branded, labeled and otherwise advertised and represented as olive oil soap.[1]

It was alleged that the oil or fat ingredient of the soap thus labeled and branded was not wholly olive oil; that genuine olive oil soap is one, the oil ingredient of which always has been and now is olive oil to the exclusion of all other oils and fats; that said soap had for many years been sold and used by the purchasing public throughout the United States and that because of its qualities had long been considered as a high quality soap, free from substances harmful to the human skin or delicate fabrics, and possessing desirable qualities not contained in other soaps; that a substantial portion of the purchasing and consuming public preferred to purchase and use soap, the oil content of which was wholly olive oil. It was alleged that petitioners were enabled to sell their soaps at prices substantially lower than its competitors who import or manufacture and sell genuine olive oil soap, and that the practices complained of have the capacity and tendency to cause and do cause the trade and public to purchase petitioners' said soap as and for genuine olive oil soap in preference to the more costly genuine olive oil soap sold by its competitors. It was further alleged that such practices had a tendency to mislead and deceive a substantial portion of the trade and purchasing public into the erroneous belief that such representations were true, and into the purchase of substantial quantities of petitioners' said soap because of such erroneous belief, and that as a result thereof, trade was unfairly diverted from those competitors dealing in the genuine olive oil soap, as well as those dealing in soap not wholly olive oil, but who truthfully advertised their soap, resulting in substantial injury to competition.

The acts, practices and methods of petitioners were alleged to injure and prejudice the public and petitioners' competitors, and to constitute an unfair method of competition within the meaning and intent of the Act.

---

[1] Among the brands and labels used by the petitioners as alleged in the complaint, are: "Wrisley's Oliv-ilo pronounced Oliv-eye-lo," "Purito Olive Oil Castile," "Wrisley's Oliv-Skin pure Toilet Soap," "Royale Olive Oil Pure," "Allen B. Wrisley Co., Chicago," "Palm and Olive Soap Regal Soap Co.," and "Palm and Olive Oil Soap."

Petitioners' answer admitted competition and that the soaps labeled and branded as alleged in the complaint were not wholly olive oil, but denied that the use of the words "Olive Oil" in describing soap, connotes to the trade or the purchasing public that it is a soap, the oil content of which is 100% olive oil. The answer admits that some of petitioners' competitors dealing in soap, the oil content of which is not wholly olive oil, truthfully advertise the same. A general denial was made of other allegations of the complaint.

The Commission, after hearing, made its findings of fact, which generally follow the allegations of the complaint. We set forth in a footnote[2] such of the specific findings as appear to be material. Predicated upon such findings, the Commission entered the order here involved, which we shall discuss hereafter.

The principal contested issues are:

(1) Is it an unfair method of competition to brand and label soaps as charged in the complaint and found by the Commission which do not contain 100% olive oil as their fat or oil content, but which do contain olive oil in lesser amounts?

(2) Is there any specific and substantial public interest in the subject matter of the complaint which should be protected by the Commission?

(3) Is there substantial evidence to support the Commission's finding that a substantial portion of the trade and purchasing public have been misled and deceived by use of the brands and labels set forth in the complaint which has resulted in a diversion of trade to petitioners and from their competitors?

(4) Is the evidence sufficient to disclose any substantial competition between petitioners' products labeled and branded as described in the complaint, and those containing olive oil as their sole oil or fat ingredient?

■ The first two issues, so it is contended, raise questions of law to be determined by the court and not by the Commission. Federal Trade Commission v. Gratz, 253 U.S. 421, 427, 40 S.Ct. 572, 64 L.Ed. 993; International Shoe Company v. Federal Trade Commission, 280 U.S. 291, 298, 50 S.Ct. 89, 74 L.Ed. 431. Petitioners concede the well established rule that the findings of the Commission are conclusive if supported by substantial evidence.

In considering the contentions of the respective parties, it is important to keep in mind that the Commission's case as revealed by the pleadings, the hearing and its argument here, is predicated upon the theory that petitioners untruthfully and falsely represented their soaps as containing 100% olive oil; that by reason of this misrepresentation alone, a substantial portion of the public was induced to purchase such soap; that it was deceived thereby and, as a result of such deception, both a substantial portion of the public and petition-

---

[2] "Olive oil soap is a soap containing olive oil as its fatty ingredient, to the exclusion of all other oils or fats. Some of the brand names and labels used by respondents in advertising their soap have led a substantial number of the trade and purchasing public to believe that the soap so labeled, branded and otherwise advertised is olive oil soap.

" * * * For many purposes, a substantial portion of the purchasing and consuming public prefer to purchase and use soap, the oil content of which is wholly olive oil. Said olive oil soap has long been and is now considered by the medical profession to have the qualities requisite and desirable for bathing infants, sick and ailing persons, and is used in medicinal preparations. Said soap has long been, and is now, prescribed and recommended by the medical profession for said purposes.

"Olive oil has been higher in price than other oils and fats commonly used in the manufacture of soap, and genuine olive oil soap is more costly to manufacture than respondents' said soaps, and respondents are enabled to, and do, sell their soaps at prices substantially less than respondents' competitors who import, or manufacture, and sell genuine olive oil soap, can and do sell the same.

"There are a substantial number of the consuming public who understand an olive oil soap to be a soap containing 100% olive oil as its oil or fat content, and prefer to buy and use said soaps.

" * * * There are among the competitors of respondents manufacturers and distributors of genuine olive oil soap and manufacturers and distributors of soap, the oil content of which is not wholly olive oil, who truthfully advertise, sell and distribute their soaps among the various states of the United States. By the use of the representations aforesaid, trade is unfairly diverted to respondents from such competitors, thereby, substantial injury is being and has been done by the respondents to competition in commerce as herein set forth."

**440**

ers' competitors were injured or damaged. In considering the alleged misrepresentation on the part of petitioners, it also must be borne in mind that they consist entirely of the brands and labels set forth in the complaint. True, the Commission in its findings referred to the "soap so labeled, branded and otherwise advertised as olive oil soap." What is meant by the words "otherwise advertised" we do not know, as we do not find a scintilla of evidence in the record that petitioners' soap was advertised, or that the alleged misrepresentation consisted of anything other than the brand or label itself.

■ One of the highly controverted questions at the hearing was, what is an "Olive Oil soap"? It is petitioners' contention that such soap is usually and generally classified by the manufacturer, retailer and the public into three classes, (1) those soaps which are genuine, 100% pure olive oil, (2) those soaps in which the olive oil content predominates, and (3) types of olive oil soaps which are for general toilet purposes and contain olive oil in lesser quantities. The soaps in question are included in the third classification. The record discloses that petitioners introduced a large amount of credible testimony sustaining its theory in this respect. On the other hand, the Commission specifically found that an olive oil soap is one containing olive oil as its fatty ingredient to the exclusion of all other oils or fats. We think there is substantial testimony in support thereof. Under such circumstances, we are not permitted to weigh the evidence and must accept the finding in this respect.

In our judgment, the important, if not controlling, question is not whether an olive oil soap is one, the contents of which are 100% olive oil, but whether the labels and brands used by the petitioners constitute a representation that the soaps so branded and labeled were pure olive oil soaps, as that term is defined by the Commission. The case of the Commission must stand or fall upon the answer to that question. In thus becomes essential to consider the brands and labels in question, with a view of ascertaining if such constitute a misrepresentation, deceptive to a substantial portion of the public, keeping in mind the theory of the case that the public was deceived only because it was falsely led to believe it was obtaining a 100% olive oil soap.

■ One of the brands named in the complaint and the findings is, "Palm and Olive Oil Soap." Was the use of such brand and label a representation that it was a 100% olive oil soap, and does the evidence substantially support a finding to that effect? There was testimony by a number of witnesses, including some of the witnesses for the Commission, who testified it would mean to them a soap, the contents of which included, at least, both palm oil and olive oil. The only evidence to the contrary, upon which the Commission is forced to rely, is found in a stipulation between counsel for the respective parties entered into during the course of the hearing. It was stipulated and agreed that if thirty members of the consuming public were called to testify, they would give certain testimony regarding various matters in controversy. Included in such matters was that "sixteen of said thirty persons would testify that they understand olive oil soap to be one, the oil content of which is 100% olive oil," while fourteen would testify to the contrary, and twenty-four of said thirty persons would testify that use of the expression "palm and olive oil soap" would lead them to believe that said soap is an olive oil soap, i. e., one containing 100% olive oil. In our judgment, such a stipulation can be given little, if any, weight, and cannot be said to be substantial in view of the unanimous testimony to the contrary given by witnesses who appeared personally. How a person with any intelligence could look at the label or brand upon a cake of soap or the wrapper thereof, containing the two descriptive words "palm and olive" oil and be misled into believing that such words meant 100% olive oil, is so incredible as to be unbelievable. We suppose that by the same process of mental reaction, such witness would believe that the words "goose grease and lard" mean 100% lard and no goose grease, or that if shown a picture of a cow and a horse, would be led to believe he had seen a picture of two horses.

What we have said with reference to palm and olive oil soap likewise applies to the brands and labels "Palm and Olive Soap" and "Oliv-Palm Complexion Soap." That the Commission had little faith in its contention as to these particular brands and labels is apparent, we think, from the exception contained in its cease and desist order which will be referred to hereafter.

■ Of the other labels and brands, namely, "Oliv-ilo," "Royal Olive Oil Pure," "Purito Olive Oil Castile," "Olive-Skin Pure Toilet Soap" and "Del Gloria Castile Made with Pure Olive Oil," the Commission found that such brands and labels represent, and lead the public to believe, that they are a 100% olive oil soap. Provisions of the stipulation referred to heretofore furnish some support for such a finding, but as to each of these labels and brands, there is the testimony of witnesses who appeared personally, furnishing additional support. While in some instances such testimony is not of a convincing nature, yet we think it is sufficient to sustain the finding.

At this point it seems appropriate to make reference to the decision of this court in Kirk & Company v. Federal Trade Commission, 59 F.2d 179, certiorari denied, 287 U.S. 663, 53 S.Ct. 220, 77 L.Ed. 572, and which petitioners argue is controlling here. While the language in that opinion apparently affords some support for petitioners' argument, we do not agree that it is controlling. There the order of the Commission was directed at the word "Castile" when used in connection with soap. It was there argued by the Commission, as here, that such soap is one in which olive oil constitutes the sole oily or fatty ingredient. The opinion comments upon the contrariety of opinion disclosed by the record and holds, in effect, that the evidence supports the finding that the use of the word "Castile" had the capacity to deceive. The court, however, regarded as decisive a bulletin promulgated by the United States Department of Commerce, Bureau of Standards, which defined the term "Castile" as applied to a soap, to include those made from oils other than olive. In other words, the definition thus given was inconsistent with that contended for by the Commission, and the court set aside the cease and desist order. Subsequently, the Supreme Court in Federal Trade Commission v. Algoma Company, 291 U.S. 67, 75, 54 S.Ct. 315, 78 L.Ed. 655 appears to have decided the effect to be given a promulgation of the Bureau of Standards contrary to that given by this court in the Kirk case, and, therefore, our holding there is unavailing here.

■■ Petitioners also argue that, as a matter of law, the Commission was without jurisdiction on account of the lack of substantial competition. The Commission replies that the question of substantial competition is foreclosed by the pleadings. It seems pertinent to point out that the record discloses, without dispute, that the soap industry is generally divided into two classes, one of which is concerned with a 100% olive oil content, and the other with a lesser content of olive oil. The former has a more limited or special use, employed largely on a physician's advice in connection with the hospitals and the sick, and is also used in certain industrial activities. The latter consists of those dealing with what is termed a general purpose soap, which includes most of the ordinary toilet soaps and its utility is far greater than the other. Petitioners were engaged in the manufacture and sale of both classes of soap. The complaint alleged that petitioners were in substantial competition with both classes of soap dealers, which allegation was admitted by the answer. We do not think such admission precludes the issue now presented. Of course, petitioners were in competition with both classes and that would be true irrespective of whether they were engaged in a legitimate business or otherwise. The question at issue is not merely one of competition, but whether unfair methods were employed which affected that competition. The Commission has found that among the competitors of petitioners are, those who manufacture and sell a 100% olive oil soap and those who manufacture and sell a soap, the oil content of which is not wholly olive oil, but who truthfully advertise, sell and distribute the same. We think there can be no question regarding the validity of such finding—in fact, it is admitted by petitioners' answer. The Commission then finds that by the use of the labels and brands as charged, trade is unfairly diverted to petitioners from such competitors and that, thereby, substantial injury has been done to competition in commerce. It would seem that the result which must follow from an unfair method of competition is diversion of trade, damage or injury to a competitor—in fact, that is one of the tests to be applied in determining if the method is unfair.

■ As was said in Federal Trade Commission v. Raladam Company, 283 U.S. 643, 649, 51 S.Ct. 587, 590, 75 L.Ed. 1324, 79 A.L.R. 1191:

" * * * Unfair trade methods are not per se unfair methods of competition.

"It is obvious that the word 'competition' imports the existence of present or poten-

442

tial competitors, and the unfair methods must be such as injuriously affect or tend thus to affect the business of these competitors—that is to say, the trader whose methods are assailed as unfair must have present or potential rivals in trade whose business will be, or is likely to be, lessened or otherwise injured. * * *"

We have no difficulty in concluding that the use of brands and labels, which falsely represented that such soap was 100% olive oil, was an unfair method of competition as to that class of competitors engaged in the manufacture and sale of 100% olive oil soap. When the public was induced to purchase by reason of such deception, it would seem to necessarily follow that trade was diverted to petitioners from its competitors who were engaged in the manufacture and sale of 100% olive oil soap, and to the detriment of the latter. It is more difficult to see, however, under the issue presented by the pleadings, how petitioners' unfair method could have resulted in any damage or injury to that class of competitors engaged in the manufacture and sale of general purpose soaps containing less than 100% olive oil. The reasoning in this respect must proceed upon the theory that such purchasers desired a special purpose soap as distinguished from a general purpose soap. Being deceived, the competitor dealing in the special purpose soap was deprived of their trade. This same public, however, who desired the special purpose soap, had it not been deceived, would not and could not have purchased from the dealer in general purpose soap. How then, could there have been any business diverted or any injury or damage sustained by the latter class of competitors? Our discussion in this respect is perhaps immaterial except as it concerns the provisions of the cease and desist order.

We are of the opinion there is no merit to petitioners' argument that the proceeding was not in the public interest. As pointed out heretofore, the Commission found that petitioners, by the use of certain brands and labels, misled and deceived the public into purchasing its product. The Court, in Federal Trade Commission v. Royal Milling Company et al., 288 U.S. 212, 217, 53 S.Ct. 335, 337, 77 L.Ed. 706, said: "* * * The result of respondents' acts is that such purchasers are deceived into purchasing an article which they do not wish or intend to buy, and which they

might or might not buy if correctly informed as to its origin. We are of opinion that the purchasing public is entitled to be protected against that species of deception, and that its interest in such protection is specific and substantial. * * *"

We now come to the challenged order itself, which, we think, is broader than the issue tendered by the complaint, and the theory on which the case was tried. As was said in Federal Trade Commission v. Gratz, 253 U.S. 421, 427, 40 S.Ct. 572, 574, 64 L.Ed. 993: "* * * Such an order should follow the complaint; otherwise it is improvident and, when challenged, will be annulled by the court."

Petitioners are ordered to cease and desist from "using the word 'olive' or any other word or words or any combination of words or parts thereof or any device of similar import or meaning to describe, designate, or in any way refer to soap, the oil or fatty content of which is not wholly olive oil, except that in the case of soap containing olive oil and other oils as the fatty content, the word 'olive' may be used as descriptive of the olive oil content if there is used in immediate connection or conjunction therewith, in letters of at least equal size and conspicuousness, · words truthfully describing and designating each constituent oil in the order of its predominance by volume, beginning with the largest single oil constituent, and provided that if any particular oil in said soap is not present in an amount sufficient substantially to effect its detergent or other qualities, the percentage in which such oil is present shall then be specifically disclosed."

Various oils and fats are used in the manufacture of soap, such as olive, palm, tallow, white grease, olive oil foots, etc. Where the soap contains a number of oils, the order, as we understand it, would require that the name of each be included in the brand or label name. This would seem highly impractical, which perhaps is immaterial, but the essential objection is that such a requirement is beyond the involved issue. The sole issue, as stated heretofore, was that the representation of a 100% olive oil soap was an unfair method of competition. If it failed to meet that requirement, it was immaterial and beside the issue as to what other ingredient it might include. It was that representation which deceived the public. The purpose of the order is to prevent such deception. In or-

der to accomplish such purpose, the public, who has been deceived, needs be informed only that petitioners' soap is less than 100% olive oil. With that information, the public who demands a 100% olive oil soap will no longer be interested in petitioners' product, or its contents.

We have pointed out some of the names complained of which we have found not to misrepresent, and which obviously should not be included in the order. Using the brand "Oliv-ilo" as illustrative of the names which we hold to misrepresent, we think the order should go no further than to forbid their use except in connection with the name of another oil or by some other word or words clearly indicating that such soap is not made wholly of olive oil. (e. g., part olive oil.) Federal Trade Commission v. Winsted Company, 258 U.S. 483, 490, 42 S.Ct. 384, 66 L.Ed. 729.

The order to cease and desist is therefore set aside, with permission to the Commission, if it shall so desire, to present an order consistent with this opinion.

TREANOR, Circuit Judge (concurring in part and dissenting in part).

Petitioners stipulated that each of the names, or brands, involved in this proceeding meant to a majority of the purchasing public an "olive oil soap"; and petitioners further stipulated that to a majority of the purchasing public an "olive oil soap" means "one, the content of which is 100% olive oil." It is true, as pointed out in the majority opinion, that there was testimony to the contrary by witnesses who appeared personally. Petitioners, however, were in a position to have special knowledge of the reaction of the purchasing public to the trade names, or brands, which identified their soaps. No doubt few people would be misled who analyzed the trade name with knowledge that palm oil and olive oil are distinct types of oil. We are not in a position to know how widespread among the purchasing public is the knowledge of the difference between palm and olive oils; nor are we informed what per cent of the soap purchasing public analyzes trade names, or brands. No doubt petitioners have considerable knowledge respecting the psychology of advertising and they have stipulated that the majority of the soap purchasing public would understand that the names, or brands, in question mean that the soaps bearing such names are olive oil soaps containing 100% olive oil. Such stipulation furnished substantial evidence for a finding that a substantial portion of the purchasing public was deceived by the names, or brands, used by petitioners.

Also I am of the opinion that the Commission's order is warranted by the facts and that the provisions of the order do not go beyond the requirements of adequate protection to the public and the prevention of evasion.