**SPIEGEL, INC., Petitioner,**

v.

**FEDERAL TRADE COMMISSION,**
**Respondent.**

**No. 73–1233.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 31, 1973.

Decided March 18, 1974.

Pell, Circuit Judge, dissented and filed opinion.

Jacob A. Stein, Washington, D.C., Patrick W. O'Brien, Chicago, Ill., for petitioner.

Harold D. Rhynedance, Jr., Asst. Gen. Counsel, William A. E. Doying, Atty., Federal Trade Commission, Washington, D.C., for respondent.

Before KILEY, Senior Circuit Judge, and PELL and SPRECHER, Circuit Judges.

KILEY, Senior Circuit Judge.

The Federal Trade Commission ordered petitioner, Spiegel, Inc., to cease and desist from engaging in deceptive trade practices and unfair competition [1] in violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(c).[2] Spiegel petitions to have the order reviewed and set aside. We deny the petition and direct enforcement of the Commission's order.

Spiegel is a catalogue retailer of, among other things, clothing, household appliances and kitchenware, with principal office and place of business in Chicago, Illinois. During the relevant period prior to November, 1971, it shipped its merchandise, when sold, from Chicago into several of the United States. In its sales efforts it advertised for credit customers in circulars to "established" and "new" customers, and seasonal catalogues to "new" customers. The Commission's complaint, issued November 8, 1971, alleged that Spiegel's advertising practices were deceptive and unfair in violation of the Act, and that the complaint was "in the public interest."

The cease and desist order followed upon Spiegel's answer denying deception, a pre-hearing stipulation of facts, a limited evidentiary hearing before a Commission hearing officer, appeals to the Commission by both parties,[3] and the Commission's adoption, with modifications, of the hearing officer's decision.

The complaint alleged that the statements contained in circulars and seasonal catalogues which offered "free trial" or "percent off" of merchandise represented directly or by implication that the offers were available "without condition of restriction;" that "in truth and in fact" the offers of shipment to the "new" customers were conditioned upon the offerees qualifying for credit under Spiegel criteria; and that no shipments were made under the offers to the "established . . . credit customers" unless the amount of the purchases, added to the pre-existing credit charges of the purchaser, was less than the total credit amount Spiegel had previously allowed the customer.

The complaint charged that Spiegel's use of these alleged "false, misleading and deceptive statements" had the "capacity and tendency" to mislead the public into purchasing Spiegel's merchandise in reliance upon the truth of the statements "all to the prejudice and injury of the public and of [Spiegel's] competitors," and constituted unfair and deceptive practices and unfair competition in violation of the Act.

Spiegel's answer denied that the complaint was in the public interest, stated that the advertising followed the custom and usage of the trade, stated the alleged unlawful practices had been abandoned, and denied deception and injury to customers or competition.

The Commission's Final Order[4] directed Spiegel to desist from its "free

---

1. Sec. 5(a)(6): "The Commission is empowered and directed to prevent persons, partnerships, or corporations . . . from using unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce." [15 U.S.C. § 45(a)(6).]

2. Sec. 5(a)(1): "Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared unlawful." [15 U.S.C. § 45(a)(1).]

3. The Commission is both prosecutor and judge under § 5(45) of the Act, FTC v. Klesner, 280 U.S. 19, 27, 50 S.Ct. 1, 74 L. Ed. 138 (1929).

4. Commission Chairman Kirkpatrick dissented on the ground that the advertisements adequately notified the customers of the conditions and that where no substantial economic loss "appears" and no testimony of consumer misunderstanding was received, the order was not "warranted."

trial" or "percent off" advertising practices as to prospective and established customers, unless it "conspicuously disclose[d] in immediate conjunction" with the offers that they are subject to Spiegel's credit approval; disclosed at the top of questionnaires requesting information about credit that the questionnaire is an application for credit; and disclosed any condition or restriction rendering an offeree ineligible to qualify for the offer. Finally, the order directed Spiegel to desist from representing directly or by implication that a free trial offer or price reduction is without condition when such condition exists.

## I.

There is no merit in Spiegel's contention that the order should be set aside as too trivial for Commission attention because there was no proof of injury to the public or to Spiegel's competitors.

 Protection of the public is essential to justify filing a Section 5 complaint. FTC v. Klesner, 280 U.S. 19, 27, 50 S.Ct. 1, 74 L.Ed. 138 (1929). However, proof of actual injury is unnecessary to support a Commission cease and desist order.

Significant in the examiner's decision, adopted by the Commission, are the statements that "an advertisement must be truthful . . . . To comply with the Federal Trade Commission Act, an advertisement must be akin to a passport for the complete truthfulness of the statements contained therein;" and that where, as here, the offers are conditioned, "unsophisticated clues to the conditions should be as obvious on the face of the advertisement as the inducing offers themselves."

The moral tone of those statements is implicit in Justice Cardozo's language in FTC v. Algoma Co., 291 U.S. 67, 78–79, 54 S.Ct. 315, 320, 78 L.Ed. 655 (1934):

Fair competition is not attained by balancing a gain in money against a misrepresentation of the thing supplied. The courts must set their faces against a conception of business standards so corrupting in its tendency. The consumer is prejudiced if upon giving an order for one thing, he is supplied with something else. Federal Trade Comm'n v. Royal Milling Co., 288 U.S. 212, 216, [53 S.Ct. 335, 77 L.Ed. 706]; Carlsbad v. W. T. Thackeray & Co., 7 Cir., 57 F. 18. In such matters, the public is entitled to get what it chooses, though the choice may be dictated by caprice or by fashion or perhaps by ignorance. Nor is the prejudice only to the consumer . . . . "A method inherently unfair does not cease to be so because those competed against have become aware of the wrongful practice." Federal Trade Comm'n v. Winsted Hosiery Co., 258 U.S. 483, 494, [42 S.Ct. 384, 385, 66 L.Ed. 729]. The careless and the unscrupulous must rise to the standards of the scrupulous and diligent. The Commission was not organized to drag the standards down. (Footnote omitted.)

The primacy of truthfulness in advertising was made explicit in FTC v. Colgate-Palmolive, 380 U.S. 374, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965), wherein the Supreme Court held that it was a deceptive practice to convey to television viewers the impression that they were watching an actual experiment when they were viewing only a simulation, notwithstanding the fact that the experiment had been conducted off-camera and the product had performed as represented. The Court stated, at 388–389, 85 S.Ct. at 1044:

We find an especially strong similarity between the present case and those cases in which a seller induces the public to purchase an arguably good product by misrepresenting his line of business, by concealing the fact that the product is reprocessed, or by misappropriating another's trademark. In each the seller has used a misrepresentation to break down what he regards to be an annoying or irrational habit of the buying public—the preference for particular manufacturers or known brands regardless of a prod-

uct's actual qualities, the prejudice against reprocessed goods, and the desire for verification of a product claim. In each case the seller reasons that when the habit is broken the buyer will be satisfied with the performance of the product he receives. Yet, a misrepresentation has been used to break the habit and, as was stated in *Algoma Lumber,* a misrepresentation for such an end is not permitted.

The Ninth Circuit, citing *Colgate-Palmolive,* has held that "[d]eception itself is the evil the statute is designed to prevent." Floersheim v. FTC, 9 Cir., 411 F.2d 874 (1969).[5] That holding is faithful to the Supreme Court decisions.

■ The promise of an unconditional "free trial" or "percent off," when both are conditional, is not in the public interest. A good society depends upon promises being kept. And individuals in society have a right to be told the truth, so that their choices among products, or, as in this case, among offers, can be understandingly made. If sellers in our society are free to compete for consumers' patronage with others by unfair advertising, not only is the consumers' right violated, but our commitment to fair competition becomes a pretense. The courts "must set their faces" against those practices which are harmful to the public interest.

The record here contains ample proof of the need to protect the public interest. Spiegel's catalogues were distributed in interstate commerce and its advertisements inserted in numerous metropolitan newspapers. Between 1969 and July 1970, approximately three million circulars offering price discounts were distributed. Spiegel distributed two million "free trial" offers annually. Net sales by "hot merchandise" catalogues were estimated at $27,000,000 in 1969 and 1970, and $30,000,000 in 1971.

■ We hold that the complaint was justified and that the Commission did not waste its time with trivia in considering the alleged deceptive and unfair practices.

## II.

■ Spiegel argues that the Commission's order is not supported by the evidence. We need not discuss the circular and catalogue statements at length in disposing of the argument. Suffice to say that the statements are clearly designed to attract credit customers to Spiegel's offers. For example, a multi-paged circular is sent with a typewritten invitation to the "Dear Customer" to try the nineteen "outstanding values . . . at our risk." "[Y]ou can order any or all of these values on 30-DAY FREE TRIAL . . . . All we require is that your order be for $10 or more . . . . We'll rush your merchandise to you." "[R]emember, you're not buying . . . merely trying." In the margin of the first page in large type is the following: "SEND NO MONEY. TRY ANY OF THESE VALUES 30 DAYS FREE." There is no statement in the circular itself of any condition or restriction, other than the $10 minimum. In another free trial offer there are small print statements of credit qualifications, such as "subject to [Spiegel's] acceptance."

The Commission did not find that Spiegel stated the offers were unconditional. It found that the conditions were not stated or located in such a way that customers, without undue difficulty, would understand that the "free trial" and "percent off" offers were not truly free but were conditioned on the customer meeting Spiegel's credit criteria. As Spiegel states it, the alleged deceptive factor was in the placement and print size of the conditions, not the lack of statement of conditions.

We have examined the circulars and catalogues in the record containing similar statements, and we hold that the evidence gives substantial support to the Commission's finding of a "capacity and tendency" to mislead the public. The

5. See also Exposition Press, Inc. v. FTC, 295 F.2d 869, 873 (2nd Cir. 1961).

testimony of Spiegel's vice-president that its advertisements lack "even the capacity to injure" does not compel a finding different from the Commission's.

### III.

■ There is no merit in Spiegel's contention that there is a fatal variance between the complaint's allegation of failure to disclose conditions on the face of the advertisements and the Commission's finding that placement of the conditions was "far removed" from the allure of the advertisement. We find no variance. And this court's Wrisley Co. v. FTC, 7 Cir., 113 F.2d 437, 442 (1940), does not support Spiegel.

### IV.

■ Spiegel has not persuaded us that three of the four paragraphs in the order "violate the stipulation" entered into by the parties at the request of the hearing examiner, and consequently bear the "badge of unfairness." [6] Nor is the order, in our opinion, "vague and ambiguous."

The thrust of the four paragraphs in the Commission's order is a requirement that the credit conditions, relating to both prospective and established customers, be stated "clearly and conspicuously . . . in immediate conjunction with" the offer in order that the prospects not be misled by positioning conditions where the average person in Spiegel's market would be likely to overlook them. The order is reasonably related to the violations found.

### V.

■ We do not share Spiegel's concern that the Commission's order will effectively "ban" free trial offers. We refer to the apt statement of the Supreme Court in *Colgate-Palmolive, supra,* 380

U.S. at 390, 85 S.Ct. at 1045: "We think it inconceivable that the ingenious advertising world will be unable, if it so desires, to conform to the Commission's insistence that the public be not misinformed." In any event, unfair and deceptive advertisements cannot be justified on the basis that they are needed either as a service to the consumer or to meet competition in the market.

### VI.

■ The original hearing examiner, at Spiegel's request, issued twelve subpoenas *duces tecum* against competitors of Spiegel. The succeeding examiner *sua sponte* quashed the subpoenas. Spiegel argues that the ruling deprived it of evidence bearing on the nature and extent of the order to be entered; and that the evidence sought would have shown Spiegel's conduct to have been exemplary viz-à-viz its competitors, since it alone of its competitors in the market stated credit conditions. It further claims the evidence was relevant to show it could believe its offers reasonable in light of its competitors' advertisements.

We hold that the ruling was not erroneous. The evidence sought was of no avail to Spiegel. Even if its competitors were more deceptive, the evidence was irrelevant. We note again the Cardozo statement, 291 U.S. at p. 79, at 54 S.Ct. at p. 320 of *Algoma,* that "the Commission was not organized to drag the standards down." See also the Sixth Circuit's statement in Collier & Son Corp. v. FTC, 427 F.2d 261, 276 (1970): "The purpose of Commission orders is not to put those employing deceptive acts or practices *in pari delicto* with each other." That Spiegel's competitors were worse does not require that Spiegel be permitted to continue the deception found by the Commission.

---

6. The parties at the hearing stipulated that the sole issue before the examiner was whether Spiegel's advertisements of "free trial" offers or "percent off" offers are un-

fair or deceptive because of the manner in which customers are notified of Spiegel's requirement of credit approval in order to obtain the benefit of such offers.

For the reasons given, the Commission's order is affirmed, and we direct its enforcement.

PELL, Circuit Judge (dissenting).

If for no other reason, the order of the FTC should be set aside by this court because of the utter triviality of the matter involved. I therefore respectfully dissent.

The FTC conceded the correctness of the general rule that detriment to the public interest must be shown. Here, by issuing its order, the FTC has in effect found there was detriment to the public interest in the situation of deadbeats being deceived into thinking that they are going to receive a free trial of, or a discount on, merchandise which they could not realistically purchase on either a cash or a deferred basis. It is difficult to imagine a less egregious affront to the public interest.

As early as 1924, only nine years after the FTC had begun to operate, it was stated that

"[t]he Commission is handling too many cases, and that it should exercise a greater discretion in selecting those cases which involve questions of public importance. It does not seem necessary that public funds should be employed to prosecute cases . . . involving trivial or merely technical offenses, in which the public interest is not always easy to discern." G. Henderson, The Federal Trade Commission 337 (3d ed. 1927).

Similarly, the Hoover Commission noted in 1949 that

"in the selection of cases for its formal dockets, the Commission has long been guilty of prosecuting trivial and technical offenses and of failing to confine these dockets to cases of public importance." Commission on the Organization of the Executive Branch of the Government, 81st Cong., 2d Sess., Task Force Report on Regulatory Commissions, app. N, 128 (Comm. Print 1949).

Most recently, The President's Advisory Council on Executive Organization, in its report entitled "A New Regulatory Framework" (January 1971), stated:

"Much of the criticism of the FTC is aimed at its disproportionate attention to comparatively trivial matters—resulting largely from the breadth of its mandate and compounded by inherent deficiencies of the collegial form of organization. Preoccupation with minutiae over the years has created a 'jack of all trades—master of none' profile for the FTC." *Id.* at 87.

In S. Buchsbaum & Co. v. Federal Trade Commission, 160 F.2d 121 (7th Cir. 1947), this court, in holding that the findings and conclusion of the Commission that the petitioner had been guilty of deceptive acts was not supported by substantial evidence, made the following pertinent comment, at 123–124:

"[E]ven though there be no proof of actual deception required, *there must be a showing that the acts and practices sought to be proscribed are detrimental to the public interest in order to satisfy the statutory requirement that the proceeding be in the public interest.* 15 U.S.C.A. § 45(b). Here the Commission made no finding that the deception, if any, had ever resulted in or had any tendency to result in detriment to the purchasing public. We find nothing in the findings to support the conclusion that the acts and practices are 'all to the prejudice and injury of the public.'" (Emphasis added.)

Putting the most blatant possible interpretation on the advertising material of Spiegel, and assuming, *arguendo*, that the most astute and sophisticated reader would be unable to find any clue in the material that would impose any qualification or condition on the enjoyment of

a free trial or a discount, whether that reader be an adult or a child, financially responsible or irresponsible, honest or dishonest, I cannot conceive that the public would be misled into thinking that these merchandising gimmicks were intended for any persons except a member of the prospective and potential purchasing public under circumstances in which Spiegel expected eventually either to receive the purchase price or the return of the merchandise. The inference that Spiegel intended to deal with financially irresponsible persons is scarcely supportable from the bare fact of a free trial offer or a discount possibility.

This is not a case where we are dealing with hidden charges which would vitiate the supposed discount, nor one where the applicant was supposedly getting a free trial but was actually required to keep the goods once they reached his possession. In fact, the parties stipulated that credit approval was the only restriction or condition qualifying these offers.

However, it is not necessary to decide the case on the above hypotheses. The basic evidence does not seem to be in dispute here, and that evidence in my opinion is totally lacking in substantiality to support a finding of deceptive advertising detrimental to the public. It is true that the statements that "All orders are subject to Spiegel Credit Approval" appeared on the catalogue rather than in equal size type with the reference to discounts and free trials. However, I know of no prohibition of the use of an eyecatcher as long as the rest of the advertising material puts the eyecatcher in proper perspective.

Under any interpretation of the advertising material, it is clear that one cannot partake either of the free trial period or the discount without filling out and signing the order form. It is necessary for the prospective free trial user or discount applicant, if a new customer, to give detailed information about marital status, income, financial obligations, nature of employment, and similar factual data for credit evaluation. In varying language, the order form makes it clear that all orders are subject to acceptance by Spiegel. As to established credit customers, I cannot conceive that they were not already aware of the fact that a favorable credit rating is required and that if they are delinquent they will not be the beneficiary of further unpaid-for utilization of Spiegel merchandise.

In his conclusion, the trial examiner stated that the practices had the capacity to mislead members of the purchasing public into the purchase of substantial quantities of Spiegel products. I wholly fail to comprehend this, as the only ones who received the products were those who passed muster on credit. It is not an uncommon trait for people to overextend themselves in credit purchasing, but there is nothing about this advertising to cause this natural human tendency to exceed its present liberal boundaries. Protection against our human frailties may be arguably a worthwhile object of civilization, but in this country, absent deception or misleading representations, we are still free to determine such matters for ourselves.

The trial examiner emphasized that advertising must be truthful, but again I fail to find that, reasonably construed, the advertising in question is otherwise. Also, the trial examiner specifically stated in reaching his conclusion that the advertising was deceptive and unfair that he did not do so on a basis of demonstrated injury to purchasers.

The Chairman of the Federal Trade Commission viewed this case, and its inconsequentiality, as I do, and I adopt and agree with his statement in dissent as being the proper dispositive basis of the case:

"I cannot agree that consumers would fail to appreciate that Spiegel's free-trial offers necessarily were sub-

ject to acceptance by Spiegel. The nature and amount of information obtained by Spiegel on its application forms, in my opinion, puts the consumer on notice that Spiegel has established criteria which prospective customers must meet prior to receiving the merchandise on a free-trial basis. It seems to me unlikely that a consumer would conclude that the information provided on the application form was irrelevant to Spiegel in deciding whether or not to provide the consumer with the offered merchandise.

"Of course, it is arguable that some few prospective customers who sent in filled-in application forms may not have fully understood the conditional nature of the offer. Also, I appreciate that economic injury is not always a condition precedent to an order under Section 5. However, in the circumstances of this case where no economic loss of any consequence appears and where no testimony was received with respect to consumers' understanding of the import of the application forms or whether Spiegel's disclosures were in fact sufficient, the entry of an order is not warranted."

Finally, and in any event, the order entered by the Commission is far too broad and is unjustified by this particular velitation.[1]

For the reasons set out in this dissent, I would set aside the order of the Commission.

---

[1]. I do not dissent from that portion of the majority opinion dealing with Spiegel's inability to demonstrate that other mail order houses engage in the same type of inducement advertising but with less candor than Spiegel does. If a law violation exists, securing compliance with the law often follows selective prosecution of one among many violators. There is no indication here of other than a normal process of selectivity.

This phase of the case was again brought to my attention after the completion of the dissent by the receipt by my wife of a mailed offer from a nationally known merchandiser. On the envelope was the word in one inch letters, "FREE!" Inside, also in large let-

ters, was reference to a free 14 day home trial of kitchen equipment. At the bottom of the backside of the "Free Trial Certificate," and nowhere else in the several sheets extolling the merchandise and referring to the privilege of free trial, small type stated, "All orders subject to credit acceptance or request for prepayment by our National Sales Office."

I read the challenged order in this case as relating only to the consuming public and not as being based upon injury to competitors, although that was also charged in the complaint. If this latter aspect had been involved, it would appear that the Subpoenas Duces Tecum should not have been quashed.